PEOPLE *v.* O'DELL.

1. CRIMINAL LAW—PROSECUTOR—AFFIRMATIVE CASE—DEFENSE.

The prosecutor as part of his affirmative case in a criminal prosecution should put in all the evidence he has, whether its tendency is to prove guilt or innocence, before defendant is put to his defense, and the prosecutor's failure to do so may constitute ground for reversal.

2. SAME—RES GESTAE WITNESSES.

The prosecuting attorney is not required to place on the stand a witness indorsed on an information who is not a *res gestae* witness (CLS 1961, § 767.40).

3. SAME—PROSECUTOR—WITNESS—CROSS-EXAMINATION—NONPRODUCTION.

The prosecuting attorney's duty is performed when he either produces an indorsed non *res gestae* witness in court and gives the defendant an opportunity to examine him or satisfactorily explains why the witness cannot be produced in court (CLS 1961, § 767.40).

REFERENCES FOR POINTS IN HEADNOTES
[1] 42 Am Jur, Prosecuting Attorneys § 20.
[2–10] 58 Am Jur, Witnesses § 3.

4. Same—Prosecutor—Waiver of Witnesses—Silence—Defendant.

> A defendant may waive the production of an indorsed witness and it is arguable that where defendant remains silent in face of an assertion that he has agreed to waive the remaining indorsed witnesses, he may be understood to have acknowledged the assertion's accuracy and properly to be held to the agreement, but the significance of silence need not be decided where the trial judge indicated his discontent with any agreement and required an explanation for the nonproduction of the witnesses (CLS 1961, § 767.40).

5. Same—Prosecutor—Judge—Rejection of Stipulation.

> Judge's interjection, "Oh, wait a minute, now. *No*," to prosecutor's statement that defendant waived production of remaining witnesses could reasonably be interpreted to be a rejection of the alleged stipulation concerning waiver of remaining indorsed witnesses (CLS 1961, § 767.40).

6. Same—Indorsed Witness—Request for Production.

> Failure of defendant in criminal case to request the production of indorsed witness cannot be deemed a waiver of the production of the witness where the trial judge has decided that nonproduction was satisfactorily explained by the prosecutor (CLS 1961, § 767.40).

7. Same—Witnesses—Nonproduction—Sufficiency.

> Failure to produce witness indorsed on an information on the charge of resisting arrest, for the reason that the witness claimed to be in ill health and preoccupied with business affairs, *held*, not to be satisfactorily explained, where no subpoena was ever issued for the witness (CLS 1961, § 767.40).

8. Same—Witnesses—Nonproduction—Sufficiency.

> Failure of prosecutor to produce witness indorsed on information for resisting arrest *held*, not to have been satisfactorily explained, where a detective testified that he "understood" that the witness was served with a subpoena (CLS 1961, § 767.40).

9. Same—Witnesses—Nonproduction—Excuse.

> Mere service of a subpoena on a witness indorsed on a criminal information does not constitute due diligence, but the prosecutor must also use what other means are at hand to produce indorsed witnesses (CLS 1961, § 767.40).

10. Same—Resisting Arrest—Res Gestae Witnesses—Nonproduc-
    tion—New Trial.
    Acceptance by trial judge of unsatisfactory explanations for the
        nonproduction of *res gestae* witnesses in trial for resisting ar-
        rest *held*, to entitle the defendant to a new trial (CLS 1961,
        § 767.40).

Appeal from Recorder's Court of Detroit; Gillis
(Joseph A.), J.  Submitted Division 1 June 9, 1967,
at Detroit.  (Docket No. 2,742.)  Decided March 22,
1968.

Paul Frederick O'Dell was convicted of resisting
an officer in discharge of his duty.  Defendant ap-
peals.  Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Richard J. Padzieski,* Assistant
Prosecuting Attorney, for the people.

*Frederick M. Maddock,* for defendant on appeal.

Levin, J.  Defendant Paul Frederick O'Dell was
convicted of resisting an officer in discharge of his
duty.  CL 1948, § 750.479 (Stat Ann 1954 Rev
§ 28.747).

The defendant had been renting property from
Maria Grigorian and Arthur Murry.  They left a
notice for the defendant to move and padlocked the
door of the property.  Discovering this, the defend-
ant borrowed a screwdriver and tore the padlock
off the door.  Shortly thereafter he became em-
broiled in an argument with Maria Grigorian and
Arthur Murry.

Two police officers testified Arthur Murry and
Maria Grigorian told the officers that the defendant

assaulted them with a screwdriver, hitting her on the head and slashing him on the arm. The police officers then went to arrest the defendant for felonious assault; he resisted and they had to use force to subdue him.

Shirley Brock, from whom the defendant borrowed the screwdriver, corroborated the defendant's claim that the borrowed screwdriver was returned before the alleged assault on Maria Grigorian and Arthur Murry. Other witnesses corroborated his claim that he did not resist an arrest.

After the 2 police officers testified, the following colloquy between the prosecutor and the court occurred:

"*Mr. Mazer:* Defense counsel agreed to waive the remainder of the witnesses.

"*The Court:* Oh, wait a minute, now. No. There is testimony here of a woman, and a man being wounded on felonious assault.

"*Mr. Mazer:* They are not present, Your Honor.

"*The Court:* Why aren't they present?

"*Mr. Mazer:* The man refuses to come to court under any circumstances.

"*The Court:* Well, that shouldn't be concealed from the Court.

"*Mr. Mazer:* Detective Caldwell, will you please take the witness stand."

Thereupon, another police officer was called. His testimony was as follows:

"*By Mr. Mazer:*

"Q. Will you tell me your name, please?

"A. Lee Caldwell.

"Q. And you are one of the officers assigned in charge of this case?

"A. Yes, I am.

"*Q.* With regard to an Arthur Murry, who is one of the people's witnesses, who is not present in court today, can you explain why?

"*A.* Due to the numerous adjournments, he called me by phone and stated that he no longer wanted to prosecute. He had some ill health, and he also sent a copy of the letter to the prosecuting attorney's office, and he said he no longer had any interest in the case, he wouldn't come down.

"I asked him if he wouldn't go to the prosecutor and tell the prosecutor this, and he said he wouldn't, he couldn't come down under any circumstances, he was too busy with his business.

"The warrant that was issued on Mr. Murry's complaint was *nolle prosequi* on the 16th of September, this year.

"*Q.* Can you tell us whether a warrant was issued in connection with this particular matter?

"*Mr. Salowich:* I will stipulate it was August 24—.

"*A.* August 25, 1965.

"*Q.* And Arthur Murry was the complaining witness?

"*A.* Yes, he was.

"*Q.* Now, can you explain to us further in connection with Maria Grigorian? Is she present in court?

"*A.* No, she isn't. She was, to my understanding, served with a subpoena. Why she isn't here, I don't know.

"*The Court:* All right, that's all, step down.

(Witness excused)

"*The Court:* That's the people's case. Proceed with the defense."

This appeal asserts that the failure to produce indorsed witnesses Maria Grigorian and Arthur Murry was error.

The prosecutor maintains that the silence of defense counsel, when the prosecutor advised the court the defense waived production of the remaining wit-

nesses, constituted a waiver of the right to have them produced. He also asserts the defendant must demand the production of such witnesses or their production will be deemed waived.

In response, the defendant claims the prosecutor must produce indorsed witnesses or satisfactorily explain their nonproduction. He also asserts that the court rejected the alleged agreement, thereby rendering unnecessary any response to the prosecutor's proffer of the alleged agreement.

In Michigan, it is a well-established principle, subject to certain exceptions, that as part of his affirmative case the prosecutor should put in all the evidence he has the means to produce relative to the whole transaction, whether its tendency is to prove guilt or innocence, before the defendant is put to his defense. The failure to do so may constitute ground for reversal. *People* v. *Dickinson* (1966), 2 Mich App 646.[1] However, the prosecuting attorney is not obliged to place on the stand an indorsed witness[2] who is not a *res gestae* witness; the prosecuting attorney's duty is performed when he either produces such a witness in court and gives the defendant an opportunity to examine him or satisfactorily explains why the witness cannot be produced in court. *People* v. *Kern* (1967), 6 Mich App 406, 410.[3]

The defendant may, as the prosecutor asserts, waive the production of an indorsed witness. It is,

---

[1] For the earlier cases, see *Maher* v. *People* (1862), 10 Mich 212, 225, 226; *Hurd* v. *People* (1872), 25 Mich 405, 415, 416; *Wellar* v. *People* (1874), 30 Mich 16, 22; *People* v. *Etter* (1890), 81 Mich 570, 572; *People* v. *Tann* (1949), 326 Mich 361, 366, 367. The question of who is a *res gestae* witness and exceptions to the general principle stated in the main text of this opinion are discussed in *People* v. *Kayne* (1934), 268 Mich 186, and *People* v. *Dickinson, supra*.

[2] CLS 1961 § 767.40 (Stat Ann 1965 Cum Supp § 28.980).

[3] For the earlier cases, see *Wellar* v. *People, supra; People* v. *Grant* (1896), 111 Mich 346, 347; *People* v. *Whittemore* (1925), 230 Mich 435, 438; *People* v. *Lummis* (1932), 260 Mich 170, 173; *People* v. *Zabijak* (1938), 285 Mich 164, 172; *People* v. *Kayne, supra*.

of course, arguable that where the defendant remains silent, as appears on this record, in the face of an assertion that the defendant has agreed to waive the remaining indorsed witnesses, he may be understood to have acknowledged the assertion's accuracy and properly held to the agreement. We think it equally arguable, however, that it is reasonable to expect an agreement which affects a substantial right of the accused to clearly appear on the record.

We see no need to decide the possible significance of defendant's silence. For here, while the defendant remained silent, the trial judge did not. The trial judge indicated his discontent with having any agreement of counsel dispose of the matter and required an explanation for the nonproduction of indorsed witnesses Maria Grigorian and Arthur Murry, after which a police officer was put on the stand to explain their failure to appear.

Defendant's appellate counsel asserts the defendant understood the trial judge's response to be a rejection of the alleged agreement concerning waiver of the remaining indorsed witnesses. We have no way of knowing whether the defendant or his trial counsel so regarded the trial judge's response, but we cannot say the interpretation advanced by the defendant's appellate counsel is unreasonable. Rather, it appears entirely reasonable. The court's first words following the offer of the alleged stipulation could well have been understood to be a rejection of the alleged stipulation:

"Oh, wait a minute, now. *No.* There is testimony here of a woman, and a man being wounded on felonious assault." (Emphasis supplied.)

The proofs in explanation of the witnesses' failure to appear in court adds to the validity of that impression. Accordingly, we would not be justified in proceeding either as if total silence of everyone

followed the prosecuting attorney's offer, or on the assumption that by silence the defendant acquiesced in the prosecutor's statement.

The prosecutor claims that a defendant must request production of indorsed witnesses and his failure to do so will be deemed a waiver of their production. He refers us to our earlier opinion in *People* v. *Rimson* (1966), 3 Mich App 713. We have already indicated it is, in general, the prosecutor's duty to produce, and give the defendant the opportunity to examine, all indorsed witnesses, even those indorsed witnesses who are not *res gestae* witnesses. However, in order to decide this case it is not necessary to attempt resolution of any conflict between that duty and our opinion in *People* v. *Rimson, supra.* Here it is apparent the trial judge decided the prosecutor had satisfactorily explained his nonproduction of Arthur Murry and Maria Grigorian. It would have been pointless, futile, indeed superfluous, for defendant's counsel thereafter to enter a request for their production.

We next consider whether the nonproduction of Arthur Murry and Maria Grigorian was satisfactorily explained. When asked why Arthur Murry was "not present in court today," the officer testified Arthur Murry did not desire to prosecute the claim of felonious assault, pleading both ill health and preoccupation with business affairs. These, obviously, were inadequate reasons for the failure to produce Mr. Murry as a witness on the charge of resisting arrest. There is no suggestion that a subpoena for this indorsed witness was ever issued.

The officer then testified that he "understood" Maria Grigorian was served with a subpoena. Even if she was, mere service of a subpoena does not constitute due diligence. *Thomas* v. *People* (1878), 39 Mich 309, 312. The prosecutor must not only issue subpoenas, but he must also use "other means at

hand" to produce indorsed witnesses. *People* v. *Zabijak* (1938), 285 Mich 164, 171, 172; *People* v. *Van Vorce* (1927), 240 Mich 75, 78.

We conclude the trial judge erred in accepting as satisfactory the explanation for the nonproduction of Arthur Murry and Maria Grigorian, and the defendant is entitled to a new trial.

Reversed and remanded for a new trial.

FITZGERALD, P. J., and T. G. KAVANAGH, J., concurred.