## PEOPLE *v.* WOODFORK

1. CRIMINAL LAW—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS —INSTRUCTIONS TO JURY—HARMLESS ERROR.

   Refusal to instruct the jury that prior inconsistent statements, used by the prosecution to impeach the credibility of defendant's accomplice called as a prosecution witness, must be considered only for that purpose and not as substantive evidence against the defendant was erroneous, but the error was harmless where the other evidence against defendant was overwhelming.

2. WITNESSES—CRIMINAL LAW—PROSECUTION WITNESS—IMPEACHMENT—HOSTILE WITNESS.

   The prosecutor may impeach the credibility of a witness he has called to the witness stand where the witness, an accomplice, has been indorsed on the information and the prosecutor has asked for a waiver of the obligation to call him, but the defense insists that he testify, if the witness is in fact hostile.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 569, 670.

58 Am Jur, Witnesses §§ 675, 767 *et seq.*

May a witness who testifies to facts be impeached by showing of prior inconsistent expressions of opinion by him. 158 ALR 820.

[2] 58 Am Jur, Witnesses § 863.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 October 6, 1970, at Lansing. (Docket No. 8534.) Decided January 21, 1971.

Howard Woodfork was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*Carl H. Leiter,* for defendant on appeal.

Before: LEVIN, P. J., and T. M. BURNS and J. E. HUGHES,* JJ.

J. E. HUGHES, J. On the evening in question, Donald Hall, Carol Hall, and Susan Masterson arrived in Mr. Hall's car at the parking lot behind a bar. Mrs. Hall was driving; the three were to meet Mr. Masterson at the bar. As they were about to get out of the car, they were surrounded by six young assailants, one of whom is the instant defendant.

Defendant was the assailant on Mrs. Masterson's side of the car and one Billy Boone was on Mrs. Hall's side. Defendant thrust a shotgun through the car window, and the assailants demanded money. After taking some money and property, the six were surprised by a police patrol car and ran off in different directions.

The two officers chased defendant and Boone, and as these two ran across an alley and a car wash, the officers managed to head them off. The officers noticed defendant's light-colored shirt and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Boone's orange shirt. For all practical purposes, the two were not out of their sight, and the officers observed both of them running out of the car wash. The officers gave chase and apprehended Boone. While they were so engaged, defendant was out of their sight for anywhere from ten seconds to less than a minute. He took this opportunity to duck into a doorway and was captured almost immediately.

Boone and defendant were arrested and charged with robbery armed, MCLA § 750.529 (Stat Ann 1954 Rev § 28.797). Boone pled guilty and defendant stood trial. He was convicted and sentenced to a term of from 9 to 20 years.

At trial, defendant was positively identified by all of the victims as the man who held the gun. One of the officers also positively identified him. The other officer could only state that the man in the doorway "had the overall general appearance of the person we were chasing, height, build, light-colored shirt."

When Boone had pled guilty, he told the judge that defendant had participated in the robbery and had in fact held the gun. Because of this, he had been indorsed on the information; he had told the prosecutor earlier that he would testify that defendant had held the gun.

At trial, however, he denied that defendant had had anything to do with the robbery. The prosecutor then used the transcript of Boone's guilty plea for impeachment purposes.

Counsel requested the court to instruct the jury that Boone's prior testimony could not be binding on defendant. The court refused the request on the ground that this was not a joint trial. In his motion for new trial, defendant reiterated his position that the jury should have been instructed that

the guilty plea testimony should be considered as to Boone's credibilty and not as substantive evidence against defendant.

In a carefully considered 23-page opinion, Judge Elliott denied defendant's motion, although he stated that he was "chagrined that the instruction was not given". The judge himself was of the opinion that such failure was clear error but that in light of the overwhelming testimony against defendant, the error should be held to be harmless in this case.

His opinion, as does ours, thoroughly reviews the evidence against defendant to support the harmless error position. We agree that the evidence against defendant was so overwhelming that the error (and error *was* committed) in not giving the requested instructions was harmless.

We note that it has been held to be reversible error not to give the instruction even though it was not requested nor objection made to its omission. *People* v. *Durkee* (1963), 369 Mich 618; *People* v. *Rodgers* (1969), 18 Mich App 37. The evidence in the instant case is much stronger than was that in *People* v. *Dozier*[1] (1970), 22 Mich App 528, 532, 533 where we said:

"However, where it has [been held reversible error], the prior, inconsistent statements have been the only direct evidence of guilt, the other evidence being either nonexistent [citation] * * * or only circumstantial [citation]. In the instant case, the complainant's testimony provided strong and direct evidence of guilt; * * * We find no reversible error."

It is error not to give the limiting instruction. The error here was harmless because the other evidence

[1] Leave to appeal in *Dozier* denied by the Michigan Supreme Court on September 2, 1970. 383 Mich 826.

of defendant's guilt was overwhelming. Accord: *People* v. *Keywell* (1931), 256 Mich 139.

A second ground for reversal urged by the defendant is that the prosecutor was permitted to impeach Billy Boone. The basis for this claim is that Boone was indorsed on the information and was called by the prosecution. The defendant's attorney claims that under these circumstances the prosecutor should not have been permitted to impeach this witness, pointing to our ruling in *People* v. *Virgil Brown* (1969), 15 Mich App 600. First, it should be pointed out that we are dealing with the same evidence regarding which the court failed to give proper instructions. Therefore, even though it might be error, for the reasons stated above, it is not reversible error. The third ground for appeal is without merit for the same reasons.

However, for the direction of the bar and trial bench, we would like to state that we do not believe that the trial judge's ruling declaring this witness hostile and allowing his impeachment was in conflict with *Virgil Brown, supra*. In the case at bar, unlike *Brown*, the defense attorney insisted that the people call Boone to the stand after the prosecutor had asked for waiver. Originally, the people had no obligation to indorse or call Boone. *People* v. *Foshie* (1969), 17 Mich App 640; *Virgil Brown*. He was, however, indorsed, and the prosecutor was obliged to produce Boone at trial but not to place him on the stand. CLS 1961, § 767.40 (Stat Ann 1970 Cum Supp § 28.980); *People* v. *O'Dell* (1968), 10 Mich App 87. Where, however, the defense insists, as it did here, that the witness take the stand, he is not truly the prosecutor's witness; the prosecutor is not bound by his answers and therefore may cross-examine and impeach him when it appears that such witness is in fact hostile. 1 Gillespie, Michigan

Criminal Law & Procedure (2d ed), § 403, and cases cited therein.

Accordingly the decision of the lower court is affirmed.

All concurred.