## PEOPLE v TERRY

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

   Refusal of a trial court in a criminal prosecution to give a requested instruction on a lesser included offense is reversible error where evidence has been presented which would support a conviction of the lesser included offense; if the lesser offense is one that is necessarily included within the greater offense, the evidence will always support the lesser if it supports the greater.

2. WITNESSES—IMPEACHMENT OF WITNESSES—PRIOR INCONSISTENT STATEMENT—WRITTEN MEMORANDUM.

   The fact that a witness made a prior inconsistent statement may not be proved by the use of a written memorandum of the statement not signed by the witness to be impeached without a showing that the person who made the memorandum cannot testify from present memory refreshed.

3. EVIDENCE—CRIMINAL LAW—WITNESSES—IMPEACHMENT OF WITNESSES—WRITTEN MEMORANDUM—FOUNDATION FOR ADMISSION.

   The reading of portions of an unsigned, unacknowledged memorandum into the record for purposes of impeachment of a witness, where the memorandum purportedly contains prior inconsistent statements of the witness and where the police officer who wrote the memorandum is not called as a witness to lay a foundation for admission of the statements, is reversible error.

4. WITNESSES—CRIMINAL LAW—INDORSED WITNESSES—PRODUCTION OF WITNESSES.

   A prosecutor has the duty to produce an indorsed witness, who is

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 878–881.
[2] 81 Am Jur 2d, Witnesses §§ 438, 439, 600.
[3] 81 Am Jur 2d, Witnesses §§ 605–607.
[4] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[5] 81 Am Jur 2d, Witnesses § 2.
[6] 5 Am Jur 2d, Appeal and Error § 800.
[7] 81 Am Jur 2d, Witnesses § 619.

not a res gestae witness, or to make a proper showing of why the witness is not present or can not be produced at trial where the defendant has expressly indicated that he will not waive production of the indorsed witness.

5. WITNESSES—CRIMINAL LAW—PRODUCTION OF WITNESSES—PROSECUTORS—DUE DILIGENCE.

A prosecutor may be excused from producing an indorsed witness if he makes a showing of due diligence in his efforts to produce the witness; mere service of a subpoena does not constitute due diligence.

6. EVIDENCE—CRIMINAL LAW—SEARCHES AND SEIZURES—CUMULATIVE EVIDENCE—HARMLESS ERROR.

Admission of evidence which was allegedly improperly seized in a search of a defendant's home was harmless error where the evidence was cumulative with other, properly obtained, evidence.

7. WITNESSES—CRIMINAL LAW—IMPEACHMENT OF WITNESS—SURPRISE.

Generally, a party may not impeach his own witness; however, a prosecutor was properly allowed to read portions of a prosecution witness's prior statement where the prosecutor was surprised by the reluctance of the witness, a minor, to testify before a courtroom full of strangers regarding the intimate details surrounding an alleged rape.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted June 23, 1977, at Detroit. (Docket No. 27762.) Decided December 9, 1977.

James E. Terry was convicted of carnal knowledge of a female minor. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Charles H. Seller,* Assistant Prosecuting Attorney, for the people.

*Chari Grove,* Assistant State Appellate Defender, for defendant.

Before: Beasley, P. J., and V. J. Brennan and
J. R. McDonald,* JJ.

J. R. McDonald, J. Defendant James Edward
Terry was convicted by a Detroit Recorder's Court
jury of carnal knowledge of a female minor (statu-
tory rape), MCLA 750.520; MSA 28.788, November
17, 1975. The alleged offense took place on Septem-
ber 25, 1974, and was not affected by the repeal of
the above section of the penal code. See saving
clause provision of 1974 PA 266, § 2, eff April 1,
1975. On December 1, 1975, defendant was sen-
tenced to a prison term of 3-1/2 to 10 years.
Defendant appeals by right.

The complainant in the instant case was defend-
ant's common-law wife's 12-year-old sister, who
was staying with the couple for the summer. De-
fendant was providing for her support. It was
alleged that defendant had raped the complainant
while his common-law wife was absent from the
house.

At trial, the prosecution was allowed to intro-
duce, over defendant's objection, evidence of two
alleged similar acts of defendant.

The victim of one such alleged similar act testi-
fied at trial. She was a minor. She said it was
difficult for her to remember what had happened.
Upon being allowed to read a statement she had
made to police some nine months after the inci-
dent, she said her memory was refreshed. It ap-
peared, however, that her memory was incomplete,
and the statement made to the police indicated
that more had happened than that to which the
witness testified at trial. The prosecutor was al-
lowed to read portions of her previous statement
in the form of questions, which the witness an-
swered in the affirmative.

Defendant took the stand and denied the wit-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ness's allegations. On cross-examination, the prosecutor asked the defendant if he knew "a woman by the name of Sandra Lawson". Defendant said he did. The prosecutor then asked if the defendant had ever had any trouble with Miss Lawson. Defense counsel objected. The trial court responded that the witness was endorsed and all the prosecutor was doing was "laying groundwork". Cassandra (Sandra) Lawson was the victim of the second alleged similar act of defendant sought to be introduced by the prosecution. She was an endorsed people's witness, and had apparently been subpoenaed to appear, but refused to do so. The trial court denied the prosecutor's request for a bench warrant to force Cassandra Lawson to appear. Defendant's attorney did not agree to waive the production of this endorsed witness. It is conceded by both parties, and the record reflects, that the court failed to take testimony as to whether or not the prosecutor exercised due diligence.

Evidence introduced at trial included two pair of the complainant's panties. One pair was seized by police from the complainant's bedroom during a warrantless search of the defendant's home after consent to the search by the complainant.

The second pair of panties was given to police by the complainant at the hospital where she was examined following the alleged rape. Both pair of panties were stained with blood and seminal fluid. The seminal fluid was found to have come from a male with the same blood type as the defendant.

Defendant's common-law wife was called by the prosecution as a res gestae witness. She said she did not believe the defendant had raped her sister. The prosecutor showed the witness a statement allegedly made by her shortly after the incident to an unidentified police officer. She said she remem-

bered talking to police about the incident, but said she refused to sign a statement "because it wasn't the way I told him". She said the whole thing was inaccurate. The prosecutor then read portions of the unsigned statement into the record and had the witness read other portions which she felt were untrue. The police officer who wrote the memorandum was not called as a witness.

Prior to giving his instructions to the jury, the trial court asked defense counsel whether he wished the instruction on assault with intent to have carnal knowledge with a female minor and assault and battery. Defense counsel, instead, requested an instruction on attempted statutory rape. The trial court refused, and instructed the jury only on the charged offense.

Defendant claims that the trial court committed reversible error in refusing to give a requested jury instruction on attempted statutory rape. We agree.

The duty of the trial court to instruct on lesser included offenses is determined by the evidence. If evidence has been presented which would support a conviction of a lesser included offense, refusal to give a requested instruction on the lesser included offense is reversible error. *People v Phillips,* 385 Mich 30, 36; 187 NW2d 211 (1971), *People v Jones,* 273 Mich 430, 431; 263 NW 417 (1935). If the offense is one that is necessarily included within the greater, that is, the greater could not have been committed without the lesser having first been committed, the evidence will always support the lesser, if it supports the greater. *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975).

We hold that the refusal of the trial court to instruct the jury on the necessarily lesser included offense of attempted statutory rape was reversible

error. *People v Lovett,* 396 Mich 101; 238 NW2d 44
(1976), *People v Thomas,* 399 Mich 826; 249 NW2d
867 (1977). We note that where this Court found a
similar error in *People v Herbert Ross,* 73 Mich
App 588, 594; 252 NW2d 526 (1977), it concluded
that the jury found that the crime of attempted
rape had been committed since they found the
defendant guilty of the greater offense of assault
with intent to rape. The Court therefore adopted
the remedy employed by the Supreme Court in
*People v Jenkins,* 395 Mich 440; 236 NW2d 503
(1975), and remanded the case for entry of a
judgment of conviction of the lesser included of-
fense of attempted rape, and for resentencing. The
trial court was given the option, upon notification
of the prosecution prior to resentencing, to grant a
new trial on the charge of assault with intent to
commit rape. We do not find that to be an appro-
priate remedy in the instant case, because of other
error committed by the trial court.

Defendant next contends that it was reversible
error to allow the prosecutor, over defense objec-
tion, to read into evidence portions of an unsigned,
unacknowledged written statement allegedly made
by a witness to a police officer, who was not called
as a witness.

At issue here is a prior inconsistent statement
allegedly made by the defendant's common-law
wife to an unidentified police officer. The witness
denounced the statement as untrue, and said that
is why she refused to sign it. The prosecutor then
pressed her as to what portions were untrue, and,
in so doing, read portions of the statement into the
record.

In his dissent in *People v Rodgers,* 36 Mich App
211; 193 NW2d 412 (1971), expressly adopted by
the Supreme Court in its opinion on appeal, 388

Mich 513; 201 NW2d 621 (1972), reversing this
Court, Judge (now Justice) Levin discussed prior
inconsistent statements. In *Rodgers,* the prosecu-
tion attempted to impeach an alibi witness with a
statement allegedly made to a detective. The detec-
tive was called as a rebuttal witness and testified
that he interviewed the alibi witness, wrote down
what the witness said, and the witness refused to
sign the statement. The trial court overruled de-
fense counsel's hearsay objection, saying it was
past recollection recorded. This Court held that
"The statement is not hearsay as that term is
evidentially understood". 36 Mich App at 217.

Judge (now Justice) Levin stated:

"However, merely because the statement made by
King to the detective *when* offered to impeach King's
credibility is not hearsay, does not grant free license to
introduce it by any means. *Whether the earlier state-
ment is, as here, oral or is written, the fact that it was
made must be proved.* If the earlier statement is writ-
ten, the witness's handwriting or signature must be
proved. *If the earlier statement is oral the impeaching
witness must be able to testify that the inconsistent
statement was in fact made.*

"Just as an impeaching witness could not testify, in
the name of impeachment, that Frank told him that
Joe told Frank that Sara remarked to Bill that the
chief defense witness had told her that the defendant
had threatened the victim, so, too, an out-of-court writ-
ten memorandum of an oral statement allegedly made
by the witness to be impeached may be used *to prove
the fact that the statement was made* only if that fact—
the fact that the witness made the statement—is prova-
ble by means of such a memorandum." 36 Mich App at
224. (Emphasis added.)

Judge Levin also noted:

"A written memorandum of an oral statement made

by another person, not signed by that person, necessarily reflects two statements; one written, the other oral: (1) it is the *written statement* of the writer of the memorandum that (2) the other person made the *oral statement* attributed to him.

"Since the written memorandum, not signed by the other person, is an out-of-court statement made by the writer that the other person said what is contained in the writing, the writing itself is hearsay without regard to whether the statement recorded in it is offered as substantive evidence or solely to impeach credibility. The rules of evidence concerning the proof of facts do not evaporate upon utterance of the magic word 'impeachment'." 36 Mich App at 225.

We are, as was Judge LEVIN, unable to find any authority holding that the fact that an inconsistent statement was made may be proved by the use of a memorandum of the statement not signed by the witness to be impeached without a showing that *the person who made the memorandum* cannot testify from present memory refreshed.

If the detective who wrote the memorandum had been called in the instant case, he could have testified that the conversation between himself and defendant's common-law wife occurred. He could have testified to the best of his recollection as to what she said, and he could have referred to the memorandum to refresh his memory. Foundation could even possibly have been laid for introducing the memorandum as past recollection recorded.

Proper foundation was not laid in the instant case. We hold that the reading of portions of the unsigned, unacknowledged memorandum into the record was reversible error.

Defendant also claims that the trial court erred in excusing the production of an endorsed witness for the prosecution.

"[T]he prosecuting attorney is not obliged to place on the stand an indorsed witness who is not a *res gestae* witness; the prosecuting attorney's duty is performed when he either produces such a witness in court and gives the defendant an opportunity to examine him or satisfactorily explains why the witness cannot be produced in court." *People v O'Dell,* 10 Mich App 87, 92; 158 NW2d 805 (1968). The defendant having expressly indicated he would not waive the endorsed witness, it was the prosecutor's duty to produce the witness, at least for cross-examination, or to make a proper showing of why she was not present or could not be produced at the trial. The prosecutor may be excused from producing an endorsed witness if he makes a showing of due diligence. *People v Woodward,* 21 Mich App 549, 554, 555; 175 NW2d 842 (1970). The mere service of a subpoena does not constitute due diligence. The prosecutor must not only issue subpoenas, but he must also use "other means at hand" to produce endorsed witnesses. *People v O'Dell, supra,* 94–95.

We are not convinced that the failure to produce the endorsed witness was properly excused by the trial court. As defendant's conviction must be reversed for other reasons, we direct the trial court to require on retrial that the prosecution either produce the endorsed witness or make a showing of due diligence in the attempt to do so.

Defendant next contends that the trial court erred in permitting to be introduced in evidence the pair of complainant's panties seized during the warrantless search of the defendant's home. The prosecution claims that the consent of the complainant to the search made the evidence admissible. While we doubt the validity of the prosecution's claim, we find it unnecessary to decide

whether the panties were improperly seized from the defendant's home. The second pair of panties was unquestionably properly obtained from the complainant at the hospital. They proved the same facts as did the pair of panties obtained at the defendant's home. We hold, therefore, that the evidence was cumulative. Any error which might have occurred was harmless. *People v Norwood,* 70 Mich App 53, 57–58; 245 NW2d 170 (1976), *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974). Since the defendant's conviction must be reversed for other reasons, we direct the trial court to hold an evidentiary hearing before admitting the pair of complainant's panties seized during the warrantless search of the defendant's home.

Finally, the defendant argues that reversible error was committed in permitting the reading into evidence of portions of another witness's prior written statement after the witness had stated that the writing had refreshed her memory and had testified concerning the occurrence described in the written statement.

The witness was a minor and the victim of a prior rape allegedly committed by the defendant. After refreshing her memory from a statement given to police nine months after the incident, she testified that the defendant had forced her into his bedroom and made her undress, but that was all that had happened. The prosecutor then read portions of the witness's prior statement which indicated sexual intercourse had also occurred. The witness said the statement was true.

As a general rule, a party cannot impeach his own witness. *People v Lee,* 307 Mich 743; 12 NW2d 418 (1943). However, a recognized exception to that rule is allowed where the prosecutor is surprised by the testimony of his witness. *People v*

*White,* 65 Mich App 56, 62; 236 NW2d 583 (1975). The reluctance of the witness, a minor, to relate, before a courtroom full of strangers, the intimate details surrounding the alleged rape is understandable. We do not find the method chosen by the prosecutor to bring out the painful details, by reading of portions of the statement with acknowledgment by the witness that they were true, was unreasonable under the circumstances of the instant case. The surprise engendered by the witness's testimony warranted such a tactic. We find no error.

Reversed and remanded.