PEOPLE v EDGAR

Docket No. 51986. Submitted December 16, 1981, at Detroit.—Decided
    February 19, 1982.

James T. Edgar was charged with first-degree criminal sexual
    conduct and was bound over for trial based upon the testimony
    of the four-year-old victim, her aunt, and her grandfather. At
    trial, the Recorder's Court of Detroit, Dalton A. Roberson, J.,
    held that the aunt and grandfather could not testify as to the
    victim's statements to them because the statements were not
    excited utterances, having been made a week after the alleged
    incident and because there is no provision in the Rules of
    Evidence for a "tender years" exception to the hearsay rule.
    The court further found that the victim was incompetent to
    testify and that her preliminary examination testimony could
    not be read at trial. Accordingly, the charge was dismissed for
    lack of competent evidence. The people appeal. *Held:*

    1. The testimony of the aunt and grandfather was clearly
    hearsay. However, the spontaneous statement made by the
    victim to her aunt falls within the excited utterance exception
    to the hearsay rule. ·

    2. The one-week delay between the event and the victim's
    statement *is* excusable by reason of the tender years exception
    to the hearsay rule, which remains as a viable, judicially
    created exception, even though not explicitly recognized by the
    Rules of Evidence.

    3. The testimony of the aunt was admissible. That of the
    grandfather was properly excluded, however, because the vic-
    tim's statement to her grandfather was prompted by her aunt.

    4. The trial court erred in reversing the examining magis-
    trate's determination that the victim was competent to testify,
    even though the trial court determined that at the time of trial
    she was not able to testify truthfully and understandably about
    the matter. The victim's reluctance or inability to answer
    questions rendered her unavailable, and her prior preliminary

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 29 Am Jur 2d, Evidence § 708.
[4] 81 Am Jur 2d, Witnesses § 139.

examination testimony was therefore admissible at trial. The subsequent showing of the victim's inability to testify truthfully affects only the credibility, not the admissibility of her prior testimony.

The order of dismissal is reversed, and the cause is remanded.

1. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

Hearsay may be admitted into evidence under the excited utterance exception only where the declaration is (1) the product of a startling event and (2) spontaneous (MRE 803[2]).

2. EVIDENCE — HEARSAY — TENDER YEARS EXCEPTION.

The tender years exception to the hearsay rule recognizes that a child-victim may be under stress caused by an event for a longer period than an adult and, therefore, a delay by such a victim in making a complaint may be excusable in so far as it is caused by fear or other equally effective circumstance.

3. EVIDENCE — HEARSAY — TENDER YEARS EXCEPTION — RULES OF EVIDENCE.

The tender years exception to the hearsay rule, although not explicitly recognized by the Michigan Rules of Evidence, is a viable, judicially created rule that has not been superseded or repealed by the rules (MRE 101).

4. WITNESSES — COMPETENCY TO TESTIFY — CREDIBILITY OF WITNESS.

An examining magistrate's decision, at a preliminary examination, that a witness is competent to testify is reviewable only to determine whether there was an abuse of discretion; where no abuse of discretion occurred, a subsequent showing of the witness's inability to testify truthfully at trial, thereby rendering the witness unavailable, affects only the credibility of the prior testimony, not its admissibility at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Jimmylee Gray,* for defendant on appeal.

Before: N. J. Kaufman, P.J., and Bashara and R. I. Cooper,* JJ.

Per Curiam. Defendant was charged with committing criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2). At the preliminary examination, the alleged victim, a four-year-old girl, testified. Her aunt, Joyce Johnson, and the aunt's father, John Louis Johnson, also testified. Based on these proofs, the magistrate bound defendant over for trial.

The trial judge granted defendant's motion to dismiss after hearing arguments and testimony.

During the preliminary examination, Caprice Johnson, the complainant, was called to testify. The court inquired into her ability to tell the truth. She stated that she knew "what telling the truth is" and that she would tell the truth to the court. Caprice then testified that her mother's boyfriend, whom she called "Daddy" and identified as defendant, forced her to commit an act of fellatio.

This incident was said to have been committed in her home while her mother slept. On direct examination, Caprice said that it occurred "right after Thanksgiving", yet on cross-examination, she stated that it took place "last night". She then testified on re-direct examination that it happened "[l]ast night, Thanksgiving".

Joyce Johnson, Caprice's aunt, was the second prosecution witness. She testified that on December 3, 1979, she and Caprice had the following conversation:

"We were lying in bed, I had put [her niece's] pajamas on trying to get them to go to sleep and while we

---

* Circuit judge, sitting on the Court of Appeals by assignment.

were lying in bed, the television was on, the phone rang, I answered the telephone, it was my boyfriend. He told me that he might come by, I said okay, we said a couple of other words and he hung up the phone.

"After that, I told Caprice, I said, 'Matthew is coming over,' then she said, 'He is?' I said, 'Yes.'

\* \* \*

"She said, 'Are we going to kiss him?' I said, 'Yes, you can kiss him if you like.' So then, she said, 'Are we going to suck his dick?' I said, 'What?' I was really shocked. She said, 'Are we going to suck his dick?' I said, 'Where did you get that from? How would you know about something like that?' And then she looked at me and at first she didn't want to tell me, she started kind of like she is, now, crying a bit, and then she said —first, she said, 'My dad,' then she said, 'No, no, no.'

"Well, I said, 'You tell me the truth and you tell me how did it happen' and she told me. She said that her dad took her in the bathroom and put his dick in her mouth and I asked her how did she open her mouth and I said, 'Well, where was your mom at?' She said her mom was in bed asleep.

"So, I told her—I kept asking her, I said, 'You tell me the truth or I'm going to spank you myself' and she said 'He's going to whip me.' This is what she said, 'He's going to whip me hard.' and I said, 'How do you know he's going to whip you?' She said, 'He said he's going to whip me if I tell' and so I called my sister, I kept trying to call Lilly, I wanted to talk to her about it first. I kept trying to call her and call her, but she was never at home."

The final witness was John Louis Johnson, the child's grandfather. He testified that on December 4, 1979, his daughter brought Caprice to him and said that the child had something to tell him. Caprice then told the witness of the incident with defendant. The examining magistrate bound defendant over for trial, finding that Caprice was competent to testify.

However, the trial court's order of dismissal held

that Joyce and John Johnson could not testify as to Caprice's statements because the declarations were not excited utterances and there is no provision in the new evidence rules for a "tender years" hearsay exception. Moreover, he ruled that Caprice was incompetent to testify "because she cannot appreciate the obligation to testify truthfully and understandably as required by MRE 601".

Furthermore, the court held that Caprice's testimony at the preliminary examination could not be read at trial under MRE 804(b)(1). The court ruled that Caprice did not recognize the difference between truth and falsity and did not respond to questions concerning the incident. It further reasoned that it is "incongruous that complainant was competent to testify at the preliminary examination * * * but now, six months later, is incompetent to testify at trial * * *". Accordingly, the charge was dismissed without prejudice for lack of competent evidence.

The prosecution seeks reinstatement of the charges and reversal of the trial court's evidentiary rulings.

Initially, the prosecution contends that the trial court erred in excluding the testimony of Joyce and John Louis Johnson on hearsay grounds. There is no dispute that the testimony constitutes hearsay: out of court statements offered as proof of the matter asserted. *People v Edwards,* 396 Mich 551; 242 NW2d 739 (1976), MRE 801(c). The prosecution argues that the statements made by Caprice to these witnesses falls within the excited utterance exception to the hearsay rule, MRE 803(2), which states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In order that hearsay be admissible under the excited utterance exception, two conditions must be met: (1) the declaration must be the product of a startling event, and (2) it must be spontaneous. *People v Lovett,* 85 Mich App 534; 272 NW2d 126 (1978).

Clearly, the fact that the victim was sexually assaulted by her father figure qualifies as a startling event. The key issue is whether or not the up to one week delay between the event and the statement precludes a finding that the statement was made while the victim was under stress from the assault.

In considering this factor, Michigan has long recognized the "tender years exception" to the hearsay rule. This judicially created rule of evidence was succinctly stated by the Supreme Court in *People v Baker,* 251 Mich 322, 326; 232 NW 381 (1930), as follows:

"The rule in this State is that where the victim is of tender years the testimony of the details of her complaint may be introduced in corroboration of her evidence, if her statement is shown to have been spontaneous and without indication of manufacture; and delay in making the complaint is excusable so far as it is caused by fear or other equally effective circumstance. An assault made by the father of the victim and his admonition to her not to tell what had happened are as effective to promote delay as threats by a stranger would have been. A child would ordinarily have no sense of outrage at such acts by her own father, and complaining of them would not occur to her. Her telling

of the affair would more naturally arise as the relation of an unusual occurrence and might be delayed until something arose to suggest it."

Also, see Anno: *Time Element as Affecting Admissibility of Statement or Complaint Made by Victim of Sex Crime as Res Gestae, Spontaneous Exclamation, or Excited Utterance,* 89 ALR3d 102, 109-114, and Anno: *Declarant's Age as Affecting Admissibility as Res Gestae,* 83 ALR2d 1368.

Thus, the tender years exception recognizes that the child-victim may be under stress caused by the event for a longer period than an adult. The reason for the delay in this case is similar to that in *Baker:* the defendant was a father figure who may have threatened the child-victim not to reveal the happening.

Furthermore, in *Lovett, supra,* the Court held that a one-week delay was not cause to exclude the excited utterances of a 3-1/2-year-old witness. Consequently, we hold that the delay in this case was not sufficient to bar admissibility of the testimony.

We believe that the remaining factor, spontaneity, has also been satisfied in the statements made by Caprice to her Aunt Joyce. However, the discussion between Caprice and her grandfather, John Louis, was not spontaneous, but was contrived by Joyce. See *Baker, supra,* 326. Consequently, we hold that the trial court erred in ruling the testimony of Joyce inadmissible and affirm the exclusion of John Louis's testimony.

In so holding, we recognize that the dicta in *People v Washington,* 84 Mich App 750; 270 NW2d 511 (1978), appears to hold that there is no tender years exception under the Michigan Rules of Evidence. We find *Washington* to be factually distinguishable from the case at bar. To the extent that it is not distinguishable, we decline to follow it.

Although the Michigan Rules of Evidence do not explicitly recognize the tender years exception, we believe it is viable as a judicially created rule that has not been superseded or repealed by the rules. MRE 101.

The prosecution also claims that the trial court erred in ruling that the preliminary examination testimony of Caprice was not admissible at trial. The court ruled that Caprice did not understand the difference between truth and falsehood at the time of trial. It was further held that it would be incongruous to hold that Caprice did understand the concept six months earlier during the preliminary examination. Consequently, Caprice was not allowed to testify at trial and her previous testimony was excluded as being unreliable.

The examining magistrate's decision that Caprice was competent to testify is reviewable only to determine whether there was an abuse of discretion. *People v Minchella,* 268 Mich 123; 255 NW 735 (1934). We cannot say that the examining magistrate abused his discretion in finding Caprice competent to testify. Nor can we say that the trial court so erred in finding her incompetent at the time of the pretrial evidentiary hearing. Although the change in the child's competency may seem incongruous on its face, her subsequent inability to testify does not alter the magistrate's initial finding. We find that the trial court erred in reversing the magistrate's determination that Caprice was competent to testify. MRE 601. A subsequent showing of the witness's inability to testify truthfully affects credibility, not admissibility. *People v Cobb,* 108 Mich App 573, 576; 310 NW2d 798 (1981).

When the trial court examined Caprice she exhibited an inability or reluctance to answer the

questions. Whether her sudden failure of memory was due to fear of the defendant or an honest lack of recall does not affect the fact that she was unavailable as a witness during trial.[1] Under MRE 804(b)(1), her prior preliminary examination testimony was admissible due to her inability to testify at trial. See *People v Terry,* 80 Mich App 299; 263 NW2d 352 (1977).

The trial court's order dismissing the charge is reversed. The matter is remanded for further proceedings consistent with this opinion.

Reversed in part; affirmed in part.

[1] Under MRE 804(a), unavailability includes situations where the declarant:

"(3) has a lack of memory of the subject matter of his statement; or

"(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; * * *."