PEOPLE v NORFLEET

Docket No. 75972. Submitted January 10, 1985, at Detroit.—Decided May 8, 1985.

Gary G. Norfleet was convicted of negligent homicide, Macomb Circuit Court, Kenneth N. Sanborn, J. Defendant appealed, alleging that the trial court erred in not allowing a seven-year-old child to testify. Defendant contended that he was a passenger in an automobile that struck and killed the victim and that the witness would have testified that the alleged driver of the automobile told her shortly after the accident, "I just killed somebody". *Held:*

1. The trial court erred in finding the witness incompetent to testify. After questioning the girl, the judge declared her incompetent without making any findings in terms of her capacity and sense of obligation to tell the truth.

2. The proffered testimony of the witness went to the heart of the defense, that being defendant's position that he was not the driver of the automobile. Under the circumstances of this case, the determination that the witness was not competent to testify was an abuse of discretion.

Reversed and remanded.

J. H. GILLIS, J., dissented. He would hold that, given the limited scope of review and the trial court's opportunity to observe the witness's manner of speech and demeanor, the defendant failed to establish that the trial court abused its discretion. He would affirm.

OPINION OF THE COURT

1. WITNESSES — COMPETENCY OF WITNESS.
    The test of whether a witness is competent to testify does not focus on whether the witness is able to tell right from wrong but, rather, on whether the witness has the capacity and sense of obligation to testify truthfully and understandably (MRE 601).

2. WITNESSES — COMPETENCY OF WITNESS.
    The determination of whether a witness is competent to testify is

REFERENCE FOR POINTS IN HEADNOTES
[1-4] 81 Am Jur 2d, Witnesses § 69 *et seq.*

within the sound discretion of the trial court and that determination is reviewable only to decide whether there was an abuse of discretion.

3. Witnesses — Competency of Witness.

A witness is presumed competent to testify, and a trial court's decision to disqualify a witness should be subject to close scrutiny since such a witness's testimony is lost to its proponent altogether, whereas if the court allows the witness to testify the court or the jury will still have the opportunity to assess the credibility of the witness (MRE 601).

Dissent by J. H. Gillis, J.

4. Witnesses — Appeal — Competency of Witness.

*The Court of Appeals should not overrule a trial court's decision that a witness was not competent to testify where the Court of Appeals has only the words spoken, in a transcript, to analyze and does not have the benefit of considering such factors as the witness's manner of speech and demeanor.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Joseph G. Wetzel,* Assistant Prosecuting Attorney, for the people.

*H. Robert Pierce,* for defendant on appeal.

Before: Allen, P.J., and J. H. Gillis and W. J. Giovan,* JJ.

Per Curiam. On August 19, 1983, defendant was convicted by a jury of negligent homicide, MCL 750.324; MSA 28.556, and sentenced on September 23, 1983, to 16 months' to two years' imprisonment. Defendant appeals as of right claiming that the trial court erred in not allowing a seven-year-old child to testify at his trial. We reverse.

The defendant claimed at trial that David Meyers was the driver of the automobile which struck

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and killed Frank Ricevuto on the evening of October 13, 1982, and that the defendant was merely a passenger. In support of this contention he attempted to introduce testimony from Rosalind Rose, a seven-year-old child, that shortly after the accident David Meyers exclaimed in her presence, "I just killed somebody". The trial court refused to allow Rosalind to testify on the ground that she was not competent to be a witness.

MRE 601 provides:

"Unless the court finds after questioning a person that he does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules."

Under questioning by the court, and later by defense counsel, the child gave answers to questions about her age, birth date and schooling. She gave an example of what would be a lie and described punishment given by her mother when she lied. She said it was wrong to tell lies and that she would tell the truth.

The trial judge declared the witness incompetent without making any findings in terms of her capacity and sense of obligation to tell the truth. The only reference to any specific personal quality of the witness came in response to defense counsel's inquiry about the basis of disqualification of the witness:

"*Mr. Goldstein:* May I inquire of the court as to which answer was not proper?

"*The Court:* You heard the questions and you heard * * *

"*Mr. Goldstein:* I heard the questioner.

"*The Court:* And if she doesn't know the difference between right and wrong * * *"

We note, first of all, that the test of competency of a witness does not focus on whether a witness is able to tell right from wrong but, rather, on whether a witness has the capacity and sense of obligation to testify truthfully and understandably. The sole basis for the trial court's conclusion, moreover, was the child's negative answers in the following portion of her examination:

"*The Court:* Do you know the difference between telling the truth and telling a lie?

"*The Witness:* Uh uh.

"*The Court:* Do you know the difference between right and wrong?

"*The Witness:* Uh uh."

We expect that an adult would have difficulty in articulating an explanation of the difference between right and wrong and between telling the truth and telling a lie. The child gave other answers that demonstrated the ability to speak understandably and a sense of obligation to tell the truth. We believe it apparent that the negative answers to the foregoing questions are more attributable to a realization that she could not explain those differences than to an absence of a sense of right and wrong.

We recognize that a determination of the competency of a witness is within the sound discretion of the trial court, *People v LaPorte,* 103 Mich App 444; 303 NW2d 222 (1981), and that the determination is reviewable only to determine whether there was an abuse of discretion. *People v Edgar,* 113 Mich App 528; 317 NW2d 675 (1982). That deference is largely due, no doubt, to the trial court's superior opportunity to assess the demeanor of the witness. As noted, however, the record discloses no observations or findings by the court which demon-

strate that the witness's disqualification was based on any assessment of her appearance or demeanor. It discloses, rather, that it was based on the acceptance at face value of negative answers to questions which did not, in any event, embrace the standard of competency established by MRE 601. In these circumstances the court's finding that Rosalind Rose was incompetent as a witness was an abuse of discretion.

However ample the discretion of the trial court may be in assessing the competency of witnesses, that discretion should be subject to closer scrutiny when it operates to disqualify a witness than when it allows a witness to testify. In the latter instance the court or jury will yet have the opportunity to assess the credibility of the witness in the light of those same qualities that raise a question regarding competency. But if the witness does not testify because of a finding of incompetency, the testimony is lost to its proponent altogether. MRE 601, to be sure, is phrased to make all witnesses presumptively competent and discloses a policy that favors the production of available evidence.

We note, moreover, that the prospective testimony of Rosalind Rose went to the heart of the defense. David Meyers had admitted speaking to the child's mother shortly after the accident but testified that he said "We killed somebody". The mother, Colleen Rose, testified that Meyers told her in the presence of Rosalind, "You have got to help me. I just killed somebody." The prosecutor aggressively attacked Colleen Rose's testimony, contending that she had a motive to incriminate David Meyers. In this circumstance we cannot say that the error in excluding Rosalind as incompetent was harmless.

Reversed and remanded for new trial.

J. H. GILLIS, J. *(dissenting)*. I respectfully dissent due to my belief that defendant has failed to establish an abuse of discretion by the trial court.

The extremely limited scope of review by which we are bound on this issue is based upon the recognition that few matters are more difficult for an appellate court, viewing only a lifeless transcript, to decide. Competency cannot be determined solely by analyzing the words spoken by a witness. Rather, the manner of speech and the demeanor of the witness are equally important to a proper determination. *People v Harris,* 110 Mich App 636, 652; 313 NW2d 354 (1981). The trial court heard and saw Rosalind Rose and thus had the benefit of considering these additional factors; we did not. Therefore, I would defer to the trial court's ruling on this matter and affirm the conviction.