PEOPLE v LaPORTE

Docket No. 47417. Submitted October 8, 1980, at Lansing.—Decided
February 3, 1981.

John W. LaPorte was convicted of kidnapping and two counts of
first-degree criminal sexual conduct and was sentenced to
prison, Saginaw Circuit Court, Gary R. McDonald, J. He ap-
peals, alleging that the complainant was not competent to
testify during trial, that the trial court erred in allowing
testimony by a police officer relative to his contacts with
defendant prior to defendant's arrest, in denying his motion for
a directed verdict and a new trial on the kidnapping charge, in
allowing the prosecution to assert a prejudicial fact during
closing argument, and in allowing a physician who attended
complainant to testify, and that the statute which bars intro-
duction of reputation evidence regarding a complainant in such
a case is unconstitutional and that its application denied him
the right to effectively confront witnesses. *Held:*

1. The trial court did not abuse its discretion in allowing the
admission of testimony by complainant. The court properly
concluded that the witness was competent and offered defense
counsel an opportunity to conduct a competency hearing which
hearing was waived by defense counsel.

2. The purpose of the testimony of a police officer concerning
his contacts with defendant prior to his arrest was to identify
defendant and to establish the basis for such identification. No
testimony as to any bad acts or prior criminal activities of
defendant was elicited. The testimony was properly admitted.

3. The trial court properly denied defendant's motion for a

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses §§ 69, 85.
[2] 81 Am Jur 2d, Witnesses §§ 80-85.
[3] 1 Am Jur 2d, Abduction and Kidnapping § 15.
  Kidnapping by fraud or false pretenses. 95 ALR2d 450.
[4, 5] 5 Am Jur 2d, Appeal and Error §§ 622, 623, 778.
[6] 4 Am Jur 2d, Appeal and Error § 398 *et seq.*
[7] 31 Am Jur 2d, Expert and Opinion Evidence § 20 *et seq.*
[8] 65 Am Jur 2d, Rape §§ 82-84.
  Modern status of admissibility, in forcible rape prosecution, of
  complainant's prior sexual acts. 94 ALR3d 257.

directed verdict and for a new trial on the charge of kidnapping. Evidence was presented that would enable a rational trier of fact to conclude that complainant revoked her initial consent and that her subsequent movement by defendant supplied the requisite element of asportation.

4. The prosecutor's brief and inadvertent reference to an accomplice's statement did not result in a miscarriage of justice. In addition, any prejudicial effect could have been eliminated by a curative instruction upon a timely objection by defendant.

5. Defendant failed to cite any case law or policy considerations in support of his allegation of error by the trial court in allowing the physician who examined complainant to testify to his opinion that she was a legitimate rape victim and thus failed to preserve his position for appellate review.

6. The statutory provision which bars evidence of a rape complainant's reputation for unchastity and past sexual conduct is constitutional and did not deny defendant his right to effectively confront witnesses.

Affirmed.

1. WITNESSES — COMPETENCY — JUDICIAL DISCRETION.

A determination of the competency of a witness is a matter within the sound discretion of a trial court.

2. WITNESSES — MENTALLY-RETARDED WITNESSES — WEIGHT AND CREDIBILITY OF EVIDENCE — TRIERS OF FACT.

A decision by a trial court to admit the testimony of a mentally-retarded witness does not constitute error requiring reversal on appeal absent an abuse of discretion by the court as the weight and credibility of such testimony is for a jury to decide.

3. KIDNAPPING — CONSENT — DEFENSES.

Consent by an alleged victim, where not obtained by fraud nor extorted by duress or threats, is a complete defense to a charge of kidnapping, but the consent must be present throughout the commission of the entire transaction, and initial consent does not necessarily exonerate a defendant from all subsequent acts.

4. PROSECUTING ATTORNEYS — UNSUBSTANTIATED STATEMENTS OF FACT — VERDICTS — APPEAL.

A prosecutor may not make a statement of fact to a jury which is unsupported by the evidence in a case, but, where such a statement is allowed by a trial court, a verdict will not be set

aside on appeal unless it affirmatively appears that the error resulted in a miscarriage of justice.

5. PROSECUTING ATTORNEYS — COURTS — IMPROMPTU STATEMENTS.

Impromptu statements made by a prosecutor or a trial court in the presence of a jury which would jeopardize a defendant's right to a fair trial should not be held to be prejudicial where they are made in good faith and, where fairly construed, do not appear to have been such as would influence a jury adversely to the rights of an accused.

6. APPEAL — PRESERVATION OF POSITIONS FOR APPEAL.

An appellant who merely asserts a position without citing any applicable case law or policy considerations fails to preserve his position for appellate review.

7. RAPE — EVIDENCE — CRIMINAL SEXUAL CONDUCT — ATTENDING PHYSICIAN'S TESTIMONY — ADMISSIBILITY.

Testimony by a physician who attends an alleged victim of first-degree criminal sexual conduct immediately after the alleged event regarding the victim's condition beyond what the record may show or beyond what is admissible under the business entry statute is admissible.

8. RAPE — EVIDENCE — REPUTATION EVIDENCE — STATUTES.

The statutory bar to the introduction of evidence of a rape complainant's reputation for unchastity and past sexual conduct does not violate constitutional provisions (MCL 750.520j; MSA 28.788[10]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Linda Berns Wright,* Appellate Prosecuting Attorney, for the people.

*Hoffmann & Martin,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and ALLEN and BEASLEY, JJ.

V. J. BRENNAN, P.J. On April 24, 1979, defendant was jury convicted of kidnapping and two counts of first-degree criminal sexual conduct con-

trary to MCL 750.349; MSA 28.581 and MCL
750.520b(1)(d); MSA 28.788(2)(1)(d), respectively. He
was sentenced to from 7 to 20 years imprisonment.
He now appeals as of right.

Defendant raises numerous issues on appeal. We
discuss them *seriatim.*

Initially, we address the pivotal issue of com-
plainant's competency to testify at trial. Through-
out various stages of the proceeding, defendant
attacked the victim's mental and moral capacity to
testify truthfully and understandably at trial.[1] The
trial court, while acknowledging that the victim
was "not mentally normal", consistently held that
she nevertheless was competent to testify.

A determination of the competency of a witness
is a matter within the sound discretion of the trial
court. *People v Atcher,* 65 Mich App 734; 238
NW2d 389 (1975), *lv den* 399 Mich 866 (1977),
*People v Eugene Johnson,* 30 Mich App 284; 186
NW2d 94 (1971), *lv den* 384 Mich 838 (1971), *Mead
v Harris,* 101 Mich 585; 60 NW 284 (1894). Even
though a witness may be mentally retarded, the
trial court's decision to admit the testimony does
not constitute reversible error absent an abuse of
discretion since the weight and credibility of the
testimony is for the jury. *Johnson, supra, Harris,
supra.*

In the instant case, it is generally conceded by
all parties, including the trial court, that com-
plainant possessed less than average intelligence.
This repeatedly was brought out in the presence of
the jury. The trial court had numerous opportuni-

[1] Defendant brought a pretrial motion to exclude complainant's
testimony and order her to undergo psychiatric evaluation to deter-
mine her competency to testify. The issue of complainant's compe-
tency was again discussed immediately before the trial began. And,
finally, defendant's motion for a new trial alluded to complainant's
mental condition.

ties to listen to her testimony including that given at the separate trial of the codefendant as well as at pretrial hearings and motions. It concluded that she had sufficient mental capacity and sense of obligation to testify truthfully and understandably. Further, the trial court specifically inquired of trial counsel as to the possibility of its holding a competency hearing regarding the complaining witness. Trial counsel, having been privy to the competency hearing in the companion case, expressly waived the competency hearing. Upon reviewing the record, we find no abuse of discretion by the trial court.

Defendant next contends that it was error for a police officer to testify that he had prior contacts or discussions with defendant prior to defendant's arrest. Defendant argues that this prejudiced the jury into thinking that defendant had constantly been a lawbreaker. This contention is without merit. When the testimony is placed into context, it is clear that the prosecutor was establishing the identity of the defendant and showing the officer's basis for identification. He elicited no testimony concerning any prior bad acts or criminal activities of the defendant, and therefore the cases cited by defendant are inapposite.

Defendant next contends that the trial court erred in denying his motion for a directed verdict and for a new trial as to the kidnapping charge. He premises this argument on the misplaced notion that complainant's initial consent to voluntarily get into defendant's automobile and drive around constitutes a complete defense to both the kidnapping charge and, more particularly, the requisite element of "asportation".

Consent, if not obtained by fraud nor extorted by duress or by threats, is a complete defense to

kidnapping. MCL 750.349; MSA 28.581. However, the consent, to be a defense to the crime of kidnapping, must be present throughout the commission of the entire transaction. *People v White,* 53 Mich App 51; 218 NW2d 403 (1974). Initial consent does not necessarily exonerate the defendant from all subsequent acts.

In the instant case, it is clear from the record that the victim initially consented to getting into defendant's automobile for the express purpose of finding her boyfriend. It is equally clear that she consented to being driven to five different locations in an attempt to locate him. However, she testified that, after they could not locate her boyfriend, she asked them to take her home. She repeated this request a number of times. Instead of taking her home as she requested, they drove her out into the country against her will. She testified that she was "screaming and hollering" and that defendant attempted to gag her. On this record, the trial court committed no error in submitting the charge of kidnapping to the jury. Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the complainant revoked her initial consent when she requested four or five times to be taken home and that the subsequent journey to the country was without her consent. Further, a rational trier of fact could have found that this movement satisfied the requisite element of asportation. *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). Similarly, on this record, it cannot be said that the trial court abused its discretion in denying defendant's motion for a new trial. MCL 770.1; MSA 28.1098, *Hampton, supra.*

Defendant also claims that the prosecuting at-

torney asserted a prejudicial fact into evidence during his closing argument. In the closing argument, while discussing the elements of first-degree criminal sexual conduct and aiding and abetting, the prosecutor stated:

"There is no question that in fact that there was threatened—there was *[sic]* threats made that she was in fact—was forced.

"This was said by the victim. And this was said by Gerald Wells, when he talked to the police."

Gerald Wells was the accomplice who was tried and convicted in a separate trial. There was nothing in evidence as to any admission made by this accomplice to the police. However, defense counsel did not object to this statement. Thereafter, the trial court gave the usual instruction that any statements made by counsel were not evidence. After the jury returned the adverse verdict, the defense counsel moved for a mistrial on the grounds of this statement. The trial court expressed its belief that the instruction to disregard statements by counsel cured the defect if there was one.

In answer to this argument, we quote from *People v Wheat,* 55 Mich App 559, 565; 223 NW2d 73 (1974):

"It is well settled that a prosecutor may not make a statement of fact to the jury which is unsupported by the evidence in the case. However, it is equally well settled that a verdict in a criminal case cannot be set aside unless it affirmatively appears that the error complained of has resulted in a miscarriage of justice. MCL 769.26; MSA 28.1096; *People v Green,* 7 Mich App 346, 354; 151 NW2d 834, 838 (1967).

"A prosecuting attorney is properly held to a very

high standard of performance. Nevertheless, the courts have recognized that infallibility will never be achieved:

" 'Great care should be taken by prosecuting officers and trial courts that no statement be made in the presence of jurors which would jeopardize a defendant's right to a fair trial. But in the haste and heat of a trial it is humanly impossible to obtain absolute perfection, and of necessity some allowance must be made in determining whether impromptu remarks are to be held prejudicial. Statements should not be held prejudicial if they are made in good faith, and, when fairly construed, they do not appear to have been such as influenced the jury adversely to the rights of the accused.' *People v Burnstein,* 261 Mich 534, 538; 246 NW 217, 218 (1933)."

In the instant case, it is undisputed that the prosecutor acted in good faith. He had just completed the accomplice's trial and apparently misspoke himself as both defendants had given inculpating statements to the police. The defendant's statement, which was properly in evidence, admitted that both he and his accomplice made threats and used force on the complainant. Thus, this brief and apparently inadvertent reference to the accomplice's statement in this lengthy trial cannot be said to have resulted in a miscarriage of justice. *Wheat, supra, People v Thomas,* 86 Mich App 752; 273 NW2d 548 (1978), *lv den* 406 Mich 971 (1979). Further, had defendant made timely objection, any prejudicial effect could have been eliminated by a curative instruction. *People v Walker,* 93 Mich App 189; 285 NW2d 812 (1979), *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977).

Defendant next contends that it constituted error requiring reversal on appeal for the trial court to allow the examining physician to testify that, in his opinion, he thought complainant was a "legitimate rape victim". Defendant fails to cite any case

law or policy considerations in support of this issue. An appellant who merely asserts a position without citing any applicable case law or policy considerations fails to preserve his position for appellate review. *Smith v Saginaw Savings & Loan Ass'n,* 94 Mich App 263; 288 NW2d 613 (1979). If we were to address the issue, we would adopt the same rationale as expressed in the companion case of *People v Gerald Wells,* 102 Mich App 558; 302 NW2d 232 (1980), in finding that no reversible error was committed. The thrust of the examining physician's testimony was that, in his expert opinion, there had been penetration against the will of the victim. This opinion was based upon the physical and emotional conditions of the complainant whom he examined shortly after the alleged rape. As such, it was admissible testimony.

"Proof of rape requires the showing of penetration. * * * And in addition, proof of rape requires the showing of use of force when the woman is past the age of consent. * * * The attending physician just after the commission of the rape is normally the best witness to these facts. In fact attending physicians have even been designated as res gestae witnesses. (Citations omitted.)

"The physician attending the victim immediately after a rape case is in a position to testify to the victim's condition beyond what the record may show or beyond what is admissible under the business entry statute." *People v Kirtdoll,* 391 Mich 370, 394-395; 217 NW2d 37 (1974).

Further we note that the instant case is both factually and legally distinguishable from *People v McGillen #2,* 392 Mich 278; 220 NW2d 689 (1974). In *McGillen,* the charge was statutory rape, and penetration was the only legal issue. In the instant case, the defendant admitted penetration, and the

only legal issue was penetration against the will of the victim. In *McGillen,* the physician did not examine the victim until after over two weeks had transpired and a subsequent rape had intervened. In the instant case, however, the examination took place within hours after the alleged incident. Moreover, in *McGillen,* the physician accepted as fact the victim's factual history and offered his medical opinion as support for the victim's factual claim that she was raped by the defendant. In the instant case, the doctor testified that he always approached with skepticism any victim's version of an alleged rape. Rather, he based his opinion upon his own independent observations of the victim's physical and emotional conditions. And, most importantly, the physician in the instant case gave no testimony as to whether or not the victim was raped by the defendant. Therefore, on this record, we find that the testimony of the attending physician that, in his expert opinion based upon the victim's physical and emotional conditions shortly after the incident, there had been penetration against the will of the victim was admissible testimony.

Lastly, defendant claims that MCL 750.520j; MSA 28.788(10) is unconstitutional in that it denies him the right to effectively confront witnesses. This statute, which bars evidence of a rape complainant's reputation for unchastity and past sexual conduct, has previously survived similar constitutional attacks. *People v Khan,* 80 Mich App 605, 611-617; 264 NW2d 360 (1978), *lv den* 406 Mich 966 (1979), *People v Patterson,* 79 Mich App 393; 262 NW2d 835 (1977), *People v Dawsey,* 76 Mich App 741; 257 NW2d 236 (1977). Again, we uphold its constitutionality.

We point out particularly that the two trials had

a total of 24 jurors who found this defendant and Wells guilty.

Of the numerous errors raised on appeal, none taken individually or collectively warrants this Court's overturning the verdict of the jury. Therefore, defendant's conviction is affirmed.

Affirmed.