PEOPLE v HOLLIDAY

Docket No. 77211. Submitted April 18, 1985, at Detroit.—Decided
August 5, 1985. Leave to appeal applied for.

Mario Holliday was convicted of first-degree murder and felony
firearm, Recorder's Court of Detroit, James E. Roberts, J.
Defendant appealed, alleging several errors. *Held:*

1. The eyewitness, a person who was with defendant at the
time, testified as to the circumstances of the killing. On cross-
examination, defense counsel asked the witness if he had been
told by police, as an inducement to his testifying, that he could
be charged with first-degree murder and that the punishment
would be a mandatory life sentence without parole. The trial
court precluded defense counsel from questioning the witness
further about the possible punishment the witness may have
avoided by agreeing to testify. Defendant alleged that this
denied him his right of confrontation. While the disclosure of a
witness's motive for testifying is an important function of cross-
examination, the witness was never charged with any felony
and there was no evidence to indicate that he was involved in
the killing. The error, if any, in limiting the cross-examination
was harmless, as defense counsel was able to show defendant's
basis for evaluating the credibility of the witness by referring
to the threat of charges as the alleged motive for the witness's
testimony.

2. The allowance of comments by the prosecutor regarding a

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Trial § 149.
   See the annotations in the ALR3d/4th Quick Index under the topic
   Trial.
[2] Am Jur 2d, Trial § 1023.
[3] Am Jur 2d, Witnesses §§ 480, 497.
[4] Am Jur 2d, Trial § 315.
   See the annotations in the ALR3d/4th Quick Index under the topic
   Argument of Counsel.
[5] Am Jur 2d, Trial §§ 317, 1080.
[6] Am Jur 2d, Trial §§ 906-918.
   See the annotations in the ALR3d/4th Quick Index under the topic
   Instructions to Jury.
[7, 8] Am Jur 2d, Evidence §§ 249, 251-257, 267.

possible inference based on the testimony was not error. The prosecutor's comments regarding defendant's failure to testify were properly ruled upon by the trial court, and the court's denial of a defense motion for a mistrial based upon the prosecutor's comments was not an abuse of discretion. Any error was cured by the court's instructions to the jury.

3. The trial court properly ruled that the prosecutor had not made an impermissible civic duty argument to the jury.

4. The jury was adequately instructed regarding the elements of first-degree murder.

5. Testimony regarding a possible motive of the victim's girlfriend to kill the victim was properly excluded. The proffered testimony was irrelevant because there was no evidence showing that the girlfriend was in any way connected with the victim's death.

6. The trial court did not err in refusing to instruct the jury on accomplice testimony, as there was no indication that the person who was with the defendant at the time of the killing was an accomplice.

7. The trial court's refusal to dismiss two prospective jurors for cause did not deny the defendant an impartial jury. The two were dismissed by defense counsel peremptorily, and counsel had not exhausted defendant's peremptory challenges when she expressed satisfaction with the jury.

Affirmed.

1. TRIAL — CROSS-EXAMINATION — JUDGE'S DISCRETION.

The scope of cross-examination is a matter for the sound discretion of the trial court, which discretion must be exercised with due regard for a defendant's constitutional rights.

2. TRIAL — CROSS-EXAMINATION — RIGHT OF CONFRONTATION.

A limitation on cross-examination which prevents a defendant from placing before the jury facts upon which an inference of bias, prejudice or lack of credibility of a witness may be drawn amounts to an abuse of discretion and may constitute a denial of the right of confrontation.

3. WITNESSES — CROSS-EXAMINATION — MOTIVE FOR TESTIFYING.

Disclosure of a witness's motive for testifying is an important function of the right of cross-examination.

4. CRIMINAL LAW — PROSECUTOR'S ARGUMENT — FAILURE TO OBJECT.

Failure to object at trial to the allowance by the court of a prosecutor's allegedly erroneous argument precludes appellate review absent a finding of manifest injustice; furthermore,

reversal is not required if the error was harmless or if any prejudicial effect could have been eliminated by a curative instruction had a timely objection been made.

5. CRIMINAL LAW — PROSECUTOR'S ARGUMENT — MISTRIAL.

Whether a prosecutor's comments are so grievous as to require a mistrial is a question left to the discretion of the trial court, and the court's ruling will not be reversed absent a finding of an abuse of discretion.

6. CRIMINAL LAW — JURY INSTRUCTIONS.

Generally, an erroneous jury instruction which is not objected to is not grounds for reversal except upon a showing of manifest injustice.

7. EVIDENCE — RELEVANT EVIDENCE.

All relevant evidence is admissible except as otherwise provided by the constitution or the rules of evidence; relevant evidence is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence (MRE 401, 402).

8. EVIDENCE — RELEVANT EVIDENCE — JUDGE'S DISCRETION.

The determination of the relevancy of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford),* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and BEASLEY and C. W. SIMON,* JJ.

BEASLEY, J. Defendant, Mario Holliday, was convicted by a jury of first-degree murder, contrary to MCL 750.316; MSA 28.548, and felony firearm,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contrary to MCL 750.227b; MSA 28.424(2). He was sentenced to life imprisonment on the murder conviction and to two years on the felony firearm conviction. Defendant appeals as of right.

On May 12, 1983, Donald Dial was shot and killed in the hallway of an apartment building located at 95 East Palmer in the City of Detroit. In his opening statement, the prosecutor advanced the following theory of the case:

"I believe that the evidence will be that on the 12th day of May of this year, 1983, at approximately 10:30 p.m., at—on the first floor of 95 East Palmer Street within the City of Detroit, that the Defendant, Mario Holliday, seated to my left, without any reason, any good reason, any moral reason, any legal reason, premeditatedly shot and killed, murdered a man, and he murdered that man with three shots from a handgun.

"That the testimony will be that Donald Dial in no way caused his own death; that the Defendant and some others had been doing some drinking; that the Defendant had a gun; that the Defendant was told to leave; that there were children there at the apartment; that he and another went out and got a beer, brought back a beer from a corner store; that when they came back, a man by the name of Dial, who was murdered, refused to let them go from the first floor to the second floor for—either for teasing reasons or whatever, but I mean for no more than a few seconds said, 'No, you can't come in', or something to that effect; and that the Defendant who had this gun, that that so annoyed him, that that so disturbed him, that he proceeded to take that person's life; that that will be essentially the justification for it is that what I've just told you."

The principal witness for the prosecution was 17-year-old Charles Toler, who was with defendant when the shooting occurred. Toler testified that the victim, Donald Dial, unlocked the door to allow both defendant and Toler to enter the apartment building at 95 East Palmer to visit Annie Jean

Mason who, according to Toler, was like a step-mother to him. At that time, Dial was coming out of a lady's apartment, trying to go into his apartment. Dial said something to defendant, which Toler did not hear. Defendant turned around and said, "I don't like what you just said", pulled a gun out and shot Dial three times. After the shooting, Toler ran upstairs to Mason's apartment and told the occupants that defendant had just shot Dial.

When Toler was first questioned by the police, he did not tell them that he had seen anything. However, the next day, he gave a statement describing what defendant had done. Defense counsel claimed that, to induce Toler to talk, a police officer told Toler that he could be charged with first-degree murder and that that crime carried a mandatory sentence of life in prison without parole. When, on cross-examination of Toler, defense counsel, in the presence of the jury, asked if the police officer told him that murder in the first degree carried a mandatory life in prison without parole, the trial judge advised the jury to "forget anything about punishment" because the jury "had nothing to do with punishment".

On appeal, defendant raises six issues. First, defendant claims that he was denied his right of confrontation when defense counsel was not permitted to question the eyewitness about the possible punishment the witness may have avoided by agreeing to testify.

Except for defendant, Charles Toler was the only eyewitness to the murder of Donald Dial. As indicated, he originally did not tell the police that he saw the shooting, but later gave a statement implicating the defendant. On cross-examination of Toler, defense counsel apparently intended to try to get Toler to testify that the police had told him

he could be charged with first-degree murder, and that a conviction carried a mandatory life sentence without the possibility of parole. Defense counsel cross-examined Toler in part as follows:

"*Q.* Okay. And it was Officer Dale Collins that came and picked you up; is that right?

"*A.* Yes.

"*Q.* Okay. And he told you that you could be charged with a crime, didn't he?

"*A.* Yes.

"*Q.* And he told you that that could be Murder I?

"*A.* Yes, he did.

"*Q.* And that that carried mandatory life in prison without parole?

"*A.* Yes, he did.

"*Q.* And you were a little—

"*Mr. Gibbs [Assistant Prosecutor]:* Does the Court want to make an instruction to the jury at this point?

"*The Court:* Yes.

"And I'm going to admonish Counsel, don't you ever do that again in this courtroom.

"You are to forget anything about punishment. You have nothing to do with that. Strike that from your memory.

"*Ms. Jacobs [Defense Counsel]:* I will just—

"*The Court:* Never mind. Proceed, please.

"*Ms. Jacobs:* Can I make my record, your Honor?

"*The Court:* You can make it after the jury's excused.

"*Q. (By Ms. Jacobs, continuing):* Okay. You were a little worried about being charged; is that correct?

"*A.* Yes.

"*Q.* And he told you this when you got downtown; is that right?

"*A.* Yes.

"*Q.* And that's when you decided to make a statement; is that right?

"*A.* Yes."

Defendant claims that it constituted a denial of

his constitutional right of confrontation[1] when the trial court limited cross-examination of Toler by refusing to allow any further inquiry into the sentence for first-degree murder which, under defendant's theory, the witness avoided by agreeing to testify. Defendant argues that going into the penalty for first-degree murder was necessary so that the jury could fully assess the bias of Charles Toler. According to defendant, instead of instructing the jury to disregard all testimony concerning punishment, the trial court should have instructed the jury that evidence of the penalty for first-degree murder could be used for the limited purpose of assessing the credibility of the prosecution's sole eyewitness, but should be disregarded for all other purposes. In this connection, defendant relied on *People v Bell*.[2]

The resolution of the issue in this case turns on the adequacy of the scope of cross-examination permitted by the trial court. While the scope of cross-examination is a matter left to the sound discretion of the trial court, that discretion must be exercised with due regard for a defendant's constitutional rights.[3] A limitation on cross-examination which prevents a defendant from placing before the jury facts upon which an inference of bias, prejudice or lack of credibility of a witness may be drawn amounts to an abuse of discretion and can constitute a denial of the right of confrontation.[4] If cross-examination of a prosecution witness has been unreasonably limited, a conviction based upon the testimony of such witness should

---

[1] US Const, Am VI; Const 1963, art 1, § 20.

[2] 88 Mich App 345; 276 NW2d 605 (1979).

[3] *People v Grisham*, 125 Mich App 280, 284-285; 335 NW2d 680 (1983).

[4] *United States v Garrett*, 542 F2d 23, 25 (CA 6, 1976); *Grisham, supra*. See *Davis v Alaska*, 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974).

not be sustained.[5] While failure to permit adequate cross-examination constitutes error, reversal is not always required where the error is harmless or no prejudice results.[6]

The primary interest secured by the confrontation clause is the right of cross-examination.[7] The disclosure of a witness's motivation for testifying is an important function of the right of cross-examination. In *People v Bell, supra,* we held that it was reversible error for the trial court to bar cross-examination of an accomplice concerning the sentence that was possible when he pled guilty to a lesser offense and agreed to testify. We held that the jury could not fully appreciate the significance of the witness's plea bargain, as it related to his credibility, unless they were informed of the difference in punishment between the plea bargain charged and the crime with which the defendant was charged. Recognizing that the jury should not normally be informed of possible punishment if a defendant is convicted, we permitted introduction of evidence concerning the penalty with a limiting instruction to the jury that the evidence regarding the sentence could only be used to assess the witness's credibility.

In the within case, defendant reasons that under *Bell* his right of confrontation was denied when he could not fully elaborate to the jury the sentence for first-degree murder that Toler might have faced if he had not agreed to testify. The context of the trial court's ruling in *Bell* is entirely different than here. In *Bell,* the witness testifying was an accomplice. Here, there is no evidence to indi-

[5] *People v Mobley,* 390 Mich 57; 210 NW2d 327 (1973).

[6] *People v Guy,* 121 Mich App 592; 329 NW2d 435 (1982), *lv den* 417 Mich 1088 (1983); *People v Johnston,* 76 Mich App 332; 256 NW2d 782 (1977).

[7] *Davis v Alaska, supra,* p 315, quoting *Douglas v Alabama,* 380 US 415, 418; 85 S Ct 1074; 13 L Ed 2d 934 (1965).

cate Toler was an accomplice. In *Bell,* the witness had been charged with armed robbery and had pled guilty to assault with intent to rob and steal while armed. Here, Toler was never charged with any felony because there was no evidence to indicate he was involved. We believe *Bell* is distinguishable from the within case and, thus, not controlling precedent.

In addition, it must be remembered that in this case the jury was hearing a first-degree murder case against defendant, Mario Holliday, and that it is elementary that the jury was not to be instructed upon or to decide the case upon the fact that first-degree murder carries a mandatory, nonparoleable life sentence.

In one sense, the issue here was whether to permit defense counsel to bring into the case by the backdoor the fact that first-degree murder carries a mandatory, nonparoleable life sentence and to dwell upon that fact in cross-examination. Thus, two rules are here in conflict. One is the constitutional right of a defendant in a criminal case to broad, far-reaching cross-examination to test the credibility and bias of prosecution witnesses. The other is the importance of having a jury search out the truth without distraction by consideration of the sentence that may be imposed if the jury finds a defendant guilty. In this case, we do not believe we have to decide which of these two rules is stronger and must prevail.

Under the facts presented in the within case, reversal is not required. If the fact that the trial judge would not permit further inquiry into the possible punishment and did not specifically instruct the jury that possible punishment could be considered in assessing credibility was error (and we do not so decide), it must be considered harmless error.

It seems that the primary defense theory was that Toler, not defendant, was Donald Dial's killer. There is no evidence here to indicate that the witness, Charles Toler, should have been charged and tried in connection with the murder of Donald Dial. This is not a case where the defendant testified and implicated Toler in the murder. On the contrary, defendant chose not to testify. Under the Fifth Amendment,[8] defendant, of course, had a constitutional right not to testify and to be free from comment by the prosecutor concerning his choice. But, when a defendant chooses to refrain from testifying, he cannot, at the same time, be permitted to indulge in speculation as to how he might have testified and to use such speculation as an evidentiary base upon which to implicate another. In this case, defendant apparently wants us to believe that if he had testified he would have said that Toler, not defendant, murdered Dial. In view of defendant's remaining silent and the lack of other evidence to implicate Toler, there was simply no basis here to support such a thesis. However, we do not rest decision on these facts. Rather, we will consider the apparent theory of the defense, even though it lacked supporting evidence.

As the previously quoted portion of the transcript indicates, defense counsel was able to get before the jury the claim that Toler had been threatened by the police that he could be charged with first-degree murder and, if convicted, face mandatory life in prison. Moreover, the trial transcript reveals that defense counsel, in her closing argument, repeatedly referred to the threat of charges against Toler when she discussed why Toler might have fabricated his accusations

[8] US Const, Am V; Const 1963, art 1, § 17.

against defendant. Thus, the jurors heard defendant's basis for evaluating the credibility of Charles Toler and defendant was not denied his right of cross-examination.

Defense counsel was able to develop why Toler was claimed to be biased and was only precluded from fully inquiring about the possible punishment if he were charged and convicted of first-degree murder. Although more latitude in the cross-examination of Toler, or a limiting instruction, might have precluded the raising of this question on appeal, the fact that defense counsel was able to show to the jury Toler's possible motive for testifying as he did and was permitted to argue the effect such charges may have had on his credibility establishes that no reversible error occurred.[9]

Second, defendant claims that remarks made by the prosecutor at trial exceeded the limits of proper questioning and argument, such that a new trial is necessary. Defendant initially argues that the prosecutor argued a theory to the jury that was not supported by the evidence and, thus, reversal is required. Since defense counsel failed to object to the prosecutor's alleged misstatement, appellate review is precluded absent a finding of manifest injustice.[10] There was no manifest injustice here. In addition, reversal is not required if the error was harmless or if any prejudicial effect could have been eliminated by a curative instruction, had a timely objection been made.[11] Furthermore, defendant's claim is without merit. The prosecutor did no more than argue a possible inference based on the testimony.

[9] See *People v Johnston, supra.*

[10] *People v Byrd,* 133 Mich App 767, 780; 350 NW2d 802 (1984).

[11] *People v LaPorte,* 103 Mich App 444, 451; 303 NW2d 222 (1981).

During voir dire, defense counsel told prospective jurors that she did not expect to call any witnesses and that defendant would not be testifying. The trial court then informed prospective jurors that defendant was not required to prove anything and that, if he did testify, his testimony was to be judged like that of any other witness. Later in voir dire, the prosecutor asked prospective jurors if they understood that if defendant did testify, the evidence for convicting him could come from his own testimony. Defendant's motion for a mistrial was denied by the trial court, which ruled that, while the comment was inappropriate, a mistrial was not warranted because the comment was in response to defense counsel's statement that defendant could choose not to testify for a variety of reasons, none of which were important for their consideration.

Whether the prosecutor's comments were so grievous as to necessitate a mistrial is a question left to the discretion of the trial court, and the court's ruling will not be reversed absent a finding of an abuse of discretion.[12] In the present case, we do not disturb the trial judge's exercise of discretion; if there was error, it was obviated by the trial court's repeated instructions to the jury that defendant did not have to testify and that no inference was to be drawn from his failure to testify.

Defendant also argues that the prosecutor denied him a fair trial by making an improper civic duty argument in his closing statement and by attempting to bolster a witness's credibility by appealing to the jurors' religious beliefs. The trial court ruled that the argument was proper and overruled defendant's objection. We agree with the trial court. The comment made by the prosecutor

---

[12] *People v Jansson,* 116 Mich App 674, 690; 323 NW2d 508 (1982).

in this case was not improper and did not amount to an impermissible civic duty argument.[13]

Defendant's other arguments and claims of prosecutorial misconduct are equally without merit and do not require reversal.

Third, defendant claims that the trial court erroneously instructed the jury concerning the element of intent to kill necessary to establish premeditated murder. However, defendant failed to object to the instructions at trial. The general rule is that an erroneous instruction, which is not objected to, is not grounds for reversal, except upon a showing of manifest injustice.[14] Furthermore, viewing the instructions as a whole, we believe that the trial court adequately instructed the jury on the elements of first-degree murder.

Fourth, defendant argues that the refusal of the trial court to allow testimony about a possible motive that the victim's girlfriend may have had to kill the deceased was an abuse of discretion.

Defendant attempted to establish at trial that a person other than himself had a motive to kill the victim. The prosecutor objected on the grounds of relevancy when defense counsel attempted to question the apartment manager about the victim's relationship with the woman with whom he was living. A separate record was made concerning the proposed testimony. The manager testified that he knew the victim had been previously arrested for spouse abuse. The manager testified that, on the date of the shooting, the girlfriend had left with another man early in the afternoon and did not return until well after the shooting. Defense counsel argued that the evidence was relevant to estab-

---

[13] See *People v Biondo,* 76 Mich App 155; 256 NW2d 60 (1977), *lv den* 402 Mich 835 (1977).

[14] *People v Burgess,* 96 Mich App 390, 399; 292 NW2d 209 (1980), *lv den* 409 Mich 912 (1980).

lish that the girlfriend had a motive to kill the victim. The trial court ruled the proffered line of questioning irrelevant, because there was no supporting evidence showing that the girlfriend was connected with the victim's death in any way.

Under MRE 402, all relevant evidence is admissible except as otherwise provided by the constitution or the rules of evidence. In MRE 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence". Relevant evidence may be excluded, however, under MRE 403, if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or waste of time, or if it is misleading to the jury.

In *People v Phillips*,[15] this Court stated:

"The burden of controlling the introduction of evidence falls upon the trial judge, who must draw upon his own wisdom and experience in making a decision as to relevancy. *People v Howard*, 391 Mich 597, 603-605; 218 NW2d 20 (1974). It is not within the role of this Court to second-guess such judgment. *People v Howard, supra*, p 603; *People v Potter*, 115 Mich App 125, 134; 320 NW2d 313 (1982)."

Thus, the determination of relevancy rests within the trial court's discretion and will not be reversed absent an abuse of discretion.[16]

In the within case, the trial court did not abuse its discretion in ruling that defendant's proffered evidence was irrelevant. Defendant argued that the evidence was relevant to establish motive. Certainly, motive was relevant in this case. How-

[15] 131 Mich App 486, 491-492; 346 NW2d 344 (1984).
[16] *People v Johnson*, 113 Mich App 575, 581; 317 NW2d 689 (1982).

ever, as the trial court noted, there was no substantiating evidence to support defendant's theory that the victim had been killed by his girlfriend. The manager testified that the girlfriend had left early in the afternoon and had not returned until well after the shooting. Thus, there was no testimony that could place the girlfriend at the scene and no evidence was presented which suggested that the girlfriend ever threatened the victim. Defendant apparently wanted to have the jury hear the testimony for whatever it was worth. Yet, none of the accusations made by defendant could be substantiated. Under these circumstances, the trial court did not err in excluding the evidence. The probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Fifth, defendant claims that the trial court erred in refusing to instruct the jury about accomplice testimony. Defendant argues that the trial court erred when it refused to give a cautionary instruction concerning accomplice testimony, CJI 5:2:03, 5:2:02 (witness a disputed accomplice), as it concerned Charles Toler. In denying defendant's request, the trial court stated that there was no testimony by any witness which suggested that Mr. Toler was defendant's accomplice. Thus, the trial court did not believe that there was even a dispute as to whether Toler was an accomplice. We agree. Defendant's claim is without merit.

Sixth, defendant argues that the trial court's refusal to excuse two jurors for cause denied defendant his right to an impartial jury. During voir dire of prospective jurors, defense counsel sought to have prospective jurors Biolchino and Wiggins dismissed for cause. After questioning the prospective jurors and informing them of their obligation,

the trial court refused to dismiss them for cause. The record reveals, however, that the trial judge did dismiss several other prospective jurors for cause when he was convinced that they could not be impartial. The two prospective jurors were dismissed by defense counsel using her peremptory challenges and, thus, did not serve on the jury. Defendant argues that by failing to dismiss the jurors for cause the trial court denied him his constitutional right to an impartial jury. Defendant's argument is without merit and must be rejected.[17]

Under MCL 768.13; MSA 28.1036, defense counsel had 20 peremptory challenges that she could exercise. The record clearly shows that she only exercised eight of her peremptory challenges. In addition, at the conclusion of jury selection, defense counsel expressly stated that she was satisfied with the jury. Under these circumstances, we conclude that defendant was not denied his right to an impartial jury. In this case, defense counsel had adequate opportunity to exercise additional peremptory challenges if she chose to do so, and the trial court did not abuse its discretion in refusing to dismiss the two disputed jurors. Defendant has simply failed to show that he was prejudiced by the trial court's ruling.

Last, defendant's assertion that this Court should find prejudice based upon an accusation that the prosecutor exercised his peremptory challenges in a racially discriminatory manner is totally unsupported by the record and has not been established.

Affirmed.

---

[17] See *People v Glover,* 83 Mich App 247; 268 NW2d 362 (1978), *lv den* 411 Mich 945-946 (1981), *reh den* 412 Mich 905 (1982).