*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FREDERICK STAMPONE,

Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 362865
Kent Circuit Court
LC No. 20-006877-FC

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of kidnapping, MCL 750.349. The trial court sentenced defendant to serve 5 to 25 years in prison. We affirm.

## I. FACTS

This case arises out of defendant taking the elderly victim out of Michigan for approximately four months without the approval of the victim's guardian. At an August 2019 hearing, the victim's daughter was appointed as the victim's full guardian after the probate court determined that the victim was "totally without the capacity to act for" herself. The guardianship order specifically stated that "[t]he guardian may not remove the domicile or residence of the ward from the State of Michigan without prior order of this court." Defendant was responsible for driving the victim to and from the August 2019 hearing; however, the victim never arrived back at her assisted living facility. Approximately four months later, the victim was found to be receiving medical treatment in New York. Defendant was thereafter convicted of kidnapping the victim, and he now appeals.

## II. INSUFFICIENT EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence for the jury to find, beyond a reasonable doubt, that he kidnapped the victim. We disagree.

A defendant does not need to take any "special steps" to preserve a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

We review de novo a sufficiency-of-the-evidence claim. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). We will examine the evidence in the light most favorable to the prosecutor to determine whether the prosecutor has presented sufficient evidence that could allow a rational trier of fact to find defendant guilty beyond a reasonable doubt. *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (citation omitted). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (alteration in original), quoting *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). "[W]e will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

According to MCL 750.349(1)(d), a person is guilty of "the crime of kidnapping if he or she knowingly restrains another person with the intent to . . . [t]ake that person outside of this state." MCL 750.349(2) explains that the term " 'restrain' means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority." Therefore, this definition of "restrain" does not require evidence of the use of physical force, a weapon, or emotional or coercive tactics.

In this case, defendant concedes that "a reasonable juror could likely infer that [defendant] provided [the victim's] mode of transportation"; however, defendant argues that there was no evidence that he restricted the victim's movements, or confined the victim, so as to interfere with her liberty. Therefore, the crux of this issue is whether defendant knowingly restrained the victim pursuant to the definition of "restrain" in MCL 750.349(2).

A. CONFINEMENT OR RESTRICTION OF MOVEMENT

The first question of this analysis turns on whether there was sufficient evidence that defendant confined or restricted the victim's movements. See MCL 750.349(2). We conclude that there was sufficient evidence for a rational trier of fact to find, beyond a reasonable doubt, that defendant restricted the victim's movements by driving her between states.

The victim's guardian gave defendant permission to provide the victim's transportation to an August 2019 hearing—although the victim's guardian did not personally witness the transportation, she believed that the victim arrived and departed the August 2019 hearing with defendant. Furthermore, the victim's guardian explained that the victim "struggled with driving," so she did not drive often, and when she did, "she wouldn't drive more than two blocks." On the evening following the August 2019 hearing, the victim, along with defendant's vehicle, were discovered missing. Later on, police sent "phone pings" to defendant's and the victim's phones, which indicated that, "within an hour or two," both phones were located "in the parking lot of the Mayo Clinic in Rochester, Minnesota." Also during the time that the victim was missing, defendant was pulled over for a traffic violation in Ohio. Furthermore, when the victim's family retrieved her from New York, the victim informed them that she and defendant had gotten married during their time away.

Therefore, regardless of whether the victim properly consented, there was sufficient evidence for a rational trier of fact to find, beyond a reasonable doubt, that defendant confined the victim—and restricted her movements—by driving a car that she was the passenger in and taking her out of state.

## B. CONSENT OR LEGAL AUTHORITY

The next question of this analysis turns on whether there was sufficient evidence that defendant knowingly restricted the victim's movements without her consent or without legal authority. See MCL 750.349(2). We answer this question in the affirmative.

Regarding the issue of consent—defendant appears to argue that, although the victim may not have been "able to competently make decisions regarding medical treatment and residency," she "was legally able to consent to getting into a vehicle driven by [defendant] regardless of [her guardian's] wishes . . . ." Defendant's argument lacks merit.

The victim's guardian classified the victim's cognitive ability in 2019 as "[p]oor" and explained that the victim "couldn't remember if she paid bills, she couldn't remember what the doctors told her, just basic general information she couldn't recall." The victim's guardian also testified that the victim experienced hallucinations in which "Ninja's came through her ceiling and were shooting her house up . . . ." Ultimately, at the August 2019 hearing, the victim's daughter was appointed as the victim's full guardian after the trial court determined that the victim was "totally without the capacity to act for" herself. The guardianship order specifically stated that "[t]he guardian may not remove the domicile or residence of the ward from the State of Michigan without prior order of this court."

In *People v LaPorte*, 103 Mich App 444; 303 NW2d 222 (1981), this Court explained the defense of consent as follows:

> Consent, if not obtained by fraud nor extorted by duress or by threats, is a complete defense to kidnapping. However, the consent, to be a defense to the crime of kidnaping, must be present throughout the commission of the entire transaction. Initial consent does not necessarily exonerate the defendant from all subsequent acts. [*Id*. at 448-449 (citations omitted).]

Accordingly, regardless of the victim's willingness to initially step into defendant's car, there was sufficient evidence presented to prove that the victim did not have the mental capacity to properly consent to getting into defendant's car and then leaving Michigan for four months to receive medical treatment at different hospitals.

Defendant further argues that the prosecution failed to introduce sufficient evidence that defendant knowingly acted without legal authority. Again, this argument lacks merit.

Before the victim was appointed a full guardian, the victim's daughter received a court order that allowed her to "prevent [defendant] from coming to the nursing home." Defendant was present at the August 2019 hearing when the victim's guardianship order went into effect, and the probate court "made it very clear that [the victim] was a vulnerable adult, and needed to be

protected . . . . [The court] even read the definition of vulnerable to [defendant]. And, just made it very clear that she was incompetent and also what the definition of that meant."

Because defendant was not the victim's guardian, he clearly lacked legal authority to take the victim out of Michigan, and to other medical facilities, for four months. Moreover, there was sufficient evidence presented to establish that defendant knew that he could not visit the victim at her assisted living facility—much less take the victim out of Michigan and to other medical facilities—without permission from the victim's guardian.

Therefore, there was sufficient evidence presented for a rational trier of fact to find, beyond a reasonable doubt, that defendant knowingly restrained the victim with the intent to take her outside of this state. See MCL 750.349(1)(d).

## III. SPEEDY TRIAL

Defendant further argues that he was denied his constitutional right to a speedy trial. We disagree.

To preserve a speedy-trial issue for appeal, a defendant must make a formal demand for a speedy trial on the record. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). In March 2021, defendant moved, *in propria persona*, to dismiss, arguing that he was denied the right to a speedy trial, and in October 2021, defense counsel also moved to dismiss defendant's charges for the denial of a right to a speedy trial. Therefore, defendant's issue is preserved for appellate review. See *id*.

We review de novo the constitutional issue whether defendant was denied his right to a speedy trial; we review the trial court's factual findings for clear error. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). Additionally, we "must determine whether any error was harmless beyond a reasonable doubt." *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). "Violation of the constitutional right to a speedy trial requires dismissal of the charge with prejudice." *Id*. at 664-665.

The right to a speedy trial is guaranteed to criminal defendants by the United States Constitution and the Michigan Constitution as well as by statute and court rule. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A); *Williams*, 475 Mich at 261. When determining whether a defendant has been denied the right to a speedy trial, the following four factors are balanced: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262.

The delay period commences at defendant's arrest. *Id*. at 261. A delay of six months is necessary to trigger an investigation into defendant's claim that he has been denied a speedy trial. *People v Walker*, 276 Mich App 528, 541; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008). However, "following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262. Scheduling delays and delays caused by the court system are attributed to the prosecutor but should be "given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. at 263 (quotation marks and citation omitted).

## A. LENGTH OF DELAY

As to the first factor—the length of the delay—defendant experienced just under 21 months of delay in this case. Because this wait was longer than 18 months, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury. See *id*. at 262. However, "the length of delay is not determinative of a speedy trial claim," *Cain*, 238 Mich App at 112-113 (quotation marks and citation omitted), and after considering the other factors, this Court has ruled that delays of 27 months to 19 years did not deny a defendant his constitutional right to a speedy trial. See, e.g., *People v Missouri*, 100 Mich App 310, 319, 324; 299 NW2d 346 (1980) (31-month delay); *People v Cutler*, 86 Mich App 118, 126-127; 272 NW2d 206 (1978) (37-month delay); *People v Smith*, 57 Mich App 556, 564-567; 226 NW2d 673 (1975) (19-year delay).

## B. REASON FOR DELAY

As to the reason for the delay in this case, defendant argues that there were three separate periods of delay. The first period of delay—the time between defendant's arrest on August 23, 2020, and defendant's motion for a psychological evaluation on September 28, 2020—consisted of 36 days. On appeal, the parties agree that this was an ordinary delay that was attributable to the prosecution.

The second period of delay—between defendant's motion for a psychological evaluation on September 28, 2020, and the trial court's determination that defendant was competent to stand trial on May 19, 2021—consisted of 233 days. Part of this delay was attributable to defendant's motion for a psychological evaluation, and part of this delay was attributable to the widespread delays associated with the COVID-19 pandemic.

Defendant first argues that some of this delay should be attributable to the prosecution because "defense counsel was not acting as [defendant's] agent when he requested a competency evaluation." However, this argument lacks merit because, when defense counsel questions whether a defendant is competent to stand trial, defense counsel is required to request a competency evaluation as a part of their effective representation. See, e.g., *People v Kuhns*, 976 NW2d 660, 660-664 (Mich, 2022) (McCORMACK, J., concurring); *Id*. (CAVANAGH, J., dissenting).

Defendant next argues that even if part of this delay was attributable to defendant, only 81 days should be attributable to him—65 days for the time that the competency evaluation should have taken,[1] and 16 days for the time that it took for defendant to be appointed new counsel. However, this second period of delay overlapped with the COVID-19 pandemic that shut down

---

[1] MCL 330.2028(1) provides in pertinent part as follows: "When the defendant is ordered to undergo an examination pursuant to section 1026, . . . [t]he examination shall be performed, defense counsel consulted, and a written report submitted to the court, prosecuting attorney, and defense counsel within 60 days of the date of the order." Additionally, MCL 330.2030(1) provides in pertinent part as follows: "Upon receipt of the written report, the court shall cause the defendant to appear in court and shall hold a hearing within 5 days or upon the conclusion of the case, proceeding, or other matter then before it, whichever is sooner . . . ."

the jury trial system in March 2020. The COVID-19 pandemic necessitated closures and delays beyond the control of anyone. In *United States v Smith*, 494 F Supp 3d 772 (ED Cal, 2020),[2] a case involving a delay of more than a year, the district court found such a delay

> to be neither attributable to the Government nor Smith. Instead, the Court's decision to take responsible, emergency health measures to limit the spread of COVID-19 is responsible for the delay. The Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay. One that does not weigh against the Government. [*Id*. at 783.]

The third period of delay—between the trial court's determination that defendant was competent to stand trial on May 19, 2021, and the start of the jury trial on May 16, 2022—consisted of 362 days. Defendant concedes that this delay "appear[ed] to have been caused by the COVID-19 pandemic." For the reasons previously stated, the prosecution should not be held responsible for delays caused by the COVID-19 pandemic. See *id*.

## C. ASSERTION OF RIGHT

As to the third factor in this case, defendant's assertion of his right—in March 2021, defendant moved, *in propria persona*, to dismiss, arguing that he was denied the right to a speedy trial, and in October 2021, defense counsel also moved to dismiss defendant's charges for the denial of a right to a speedy trial. However, in November 2021, the trial court denied defendant's motion.

## D. PREJUDICE TO DEFENDANT

In this case, prejudice to defendant is presumed because this delay, of just under 21 months, was longer than 18 months. See *Williams*, 475 Mich at 262. A defendant can experience two types of prejudice while awaiting trial—prejudice to his person and prejudice to the defense. *Id*. at 264 (citation omitted). Prejudice to the person results when pretrial incarceration deprives an accused of many civil liberties, and prejudice to the defense occurs when the delay might prejudice the defense. See *id*.; *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Prejudice to the defense "is the more serious concern[.]" *Williams*, 475 Mich at 264.

Defendant argues that his health drastically declined while he was incarcerated, stating that "[a]t nearly 70 years of age, [defendant] lost 118 pounds and endured COVID-19 while held in an environment that prohibited social distancing." Defendant further argues that prejudice to his defense occurred when the victim died and was unable to testify at trial. However, in denying defendant's motion to dismiss, the trial court found that defendant had not established prejudice because the victim would not have been competent to testify at trial. We agree with the trial court's finding. The victim's memory was poor, she experienced hallucinations, and she was appointed a full guardian after the trial court determined that she was "totally without the capacity to act for" herself. Additionally, defendant merely speculates that the victim would have testified on his

---

[2] "Opinions of the lower federal courts and foreign jurisdictions are not binding but may be considered persuasive." *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018).

behalf; however, there is no indication of that speculation being true especially because the victim did not testify at the preliminary hearing even though she was alive at the time.

The delay in this case was attributable to the COVID-19 pandemic, which necessitated closures beyond anyone's control. Moreover, as previously stated, even without the COVID-19 pandemic closures, this Court has held that even lengthier delays did not deny the constitutional right to a speedy trial. Accordingly, defendant's speedy-trial claim lacks merit.

## IV.  UPWARD DEPARTURE

Defendant further argues that trial court abused its discretion by sentencing him above the recommended sentencing guidelines range. We disagree.

"There are no special steps that a defendant must take to preserve the question whether the sentence was proportional . . . ." *People v Walden*, 319 Mich App 344, 350; 901 NW2d 142 (2017). "Further, there is no preservation requirement when the trial court imposes a sentence more severe than the sentencing guidelines recommend." *Id*. at 350-351.

A sentencing court that departs from the applicable guidelines range does not need to supply a substantial or compelling reason for doing so. *People v Lockridge*, 498 Mich 358, 364-365; 870 NW2d 502 (2015). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id*. at 477. Instead of measuring proportionality by references to deviations in the guidelines, the Michigan principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted).

Sentencing guidelines are advisory, not mandatory. *Lockridge*, 498 Mich at 399. "[A]lthough the guidelines can no longer be mandatory, they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391. "[T]rial courts 'must consult those Guidelines and take them into account when sentencing.' " *Id*., quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). Although a sentencing court may depart from the sentencing guidelines without a substantial and compelling reason to do so, it "must justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 391-392.

"Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). However, under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472

(quotation marks and citation omitted). "[T]he judge, of course, must take into account the nature of the offense and the background of the offender." *Id*. (quotation marks and citation omitted).

Three relevant factors are examined when determining whether a departure sentence is more proportionate than a sentence within the guidelines range: "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525. These factors are not an exhaustive list of considerations—for example, "the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation" can all be considered. *Walden*, 319 Mich App at 352-353 (quotation marks and citation omitted).

In this case, defendant's sentencing guidelines recommendation was 21 to 35 months in prison; however, the trial court sentenced defendant, above the recommended guidelines range, to serve 5 to 25 years in prison. Defendant was assigned zero points for his prior record variables because he had no criminal history.

When departing from the recommended sentencing guidelines range, the trial court explained that it considered "a short list of factors that are simply not considered by the guidelines." The trial court reasoned that the guidelines did "not take into account the fear and distress [defendant] caused [the victim's] family as they wondered for months where she was, whether she was even alive." The trial court further stated as follows:

> You put her life in jeopardy, you put her comfort in jeopardy . . . . You took her away for all this time while she was suffering like that, and you took away this family's ability to gather around her as she was—as she lay dying. And—and the other thing is, sir, you have the Constitutional right to profess your innocence, and—and I have no quarrel with that, and will not take into account for purposes of sentencing that you're maintaining your innocence. That does not mean, however, that I have to ignore some of the Statements you made in the [presentence investigation report (PSIR)].

The trial court then went on to detail the following statements that defendant made in the PSIR:

> "I did not kidnap my wife. She ran away. She got into a car and drove. I don't know how she got to Minnesota. I got a call to meet her there."

> I sat through the trial, [defendant]. That is contrary to all the undisputed evidence that was submitted at that trial.

> "She was cured of cancer, but her daughter wouldn't take her to follow-up appointments and killed her."

> The fact that you would blame the—of all the family, the one woman who was working her hardest to take care of her mother, to blame her and accuse her of killing her mother is just simply—that should—the—the coldness of that statement is hard for me to even grasp.

You then went on to say, "She was dying." How did you get involved in the cause, "She was dying. [The probate court] wouldn't let her get a second opinion. She got throat cancer and the doctor gave her an eight-hour treatment. She fell down and hit her head. They gave her hallucinating drugs. Her daughter went on and wiped out her bank account of $37,000. [The victim] did not want her daughter to be conservator. The judge was paid off and I can prove it."

Again, blaming the victim and making demonstrably false allegations of theft; demonstrably false allegations of the judicial system shows that you clearly have no concept of the seriousness of this offense.

It shows that you are somewhat in—you are incorrigible in my opinion, that you pose a serious danger to society. I don't believe any of the things that I just discussed is adequately represented by the guidelines.

The trial court also considered defendant's age as follows:

Now I am taking into consideration the fact that you're 69-years-old. And, I'm going to reduce the sentence to somewhat reflect your advanced age.

So I'm only going to add a little more than two years to your sentence because, in my judgment, five years is more proportionate to the offense than the less than three years called for by the sentencing guidelines.

Therefore, the trial court very clearly: (1) justified its reasons for the departure; and (2) considered whether the guidelines accurately considered, and reflected, the seriousness of defendant's crime. Accordingly, the trial court provided adequate justifications to explain why the upward departure was proportionate to the seriousness of the matter. Considering the length of the departure, the evidence in the record, and the trial court's statements in support of the sentence, we conclude that the trial court did not abuse its discretion, and the sentence imposed was both reasonable and proportionate.

V. STANDARD 4 BRIEF

Furthermore, in a Standard 4 brief, defendant appears to argue that: (1) insufficient evidence was presented, (2) the trial court erred by admitting defendant's booking photograph over objection, and (3) defendant was prejudiced by the trial court's jury instructions. We find these arguments to be waived.

Pro se complainants are held to less stringent standards than lawyers. See *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972). However, "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). In this case, defendant's Standard 4 brief contains assertions, but no legal analysis. Instead, defendant has "left it to this Court to discover and rationalize the basis for [his] claim[s]." *Id.* (quotation marks and citation omitted). Therefore, defendant's failure to properly address the merits of his assertions constitutes an abandonment of his issues. See *id.*

Regardless, to the extent that we address defendant's contentions, we conclude that they have no merit. As already discussed, there was sufficient evidence presented for a rational trier of fact to find, beyond a reasonable doubt, that defendant kidnapped the victim. Further, the trial court did not abuse its discretion by admitting the booking photograph because the court properly: (1) explained the photograph's relevancy and (2) determined that the photograph was not unfairly prejudicial. And the trial court did not err in its jury instructions because the standard jury instructions that the trial court read—regarding circumstantial evidence and jury verdicts—were clearly applicable and relevant to this case.

Affirmed.


/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra